Judge Robertson,
delivered the opinion of the Court
On the 5th of January, 1818, Croghan sold and conveyed, to Fitzburgh and Thruston, part of a town lot, in Louisville. He covenanted in his deed, that he was seised of the legal title to the lot, and had a right to sell it.
It appears that Croghan was in possession, when he conveyed the lot, and that he delivered the possession to Fitzhugh and Thruston, who have since retained without eviction, or disturbance.
Apprehending that Croghan’s title was defective, his vendees, (the appellants) on the 22d of Septena* berr, 1824, brought an action of covenant against him, averring, as a breach of his covenant, that he was not seised of the legal title, and had no right to sell and convey.
Croghan plead that he' was seised of the legal title to the lot, at the date of his deed, to the appellants. The case being tried on this issue, a verdict and judg* ment, were rendered for Croghan. To reverse which, this appeal is prosecuted.
The principal errors relied on by the appellants, are those which call in question Croghan’s title. There are others, less important, which question the legality of instructions given by the court, and of opinions, overruling motions to instruct the jury.
Before these are examined, however, a preliminary objection will be noticed. It is, that the plea is not responsive to the entire breach in the declartaion; the latter charging a want of legal title, and of right to convey; and the former averring seisin, only.
This objection is fallacious. If Croghan were seised of the le'gal title, he had a right to convey. A complete legal title, is the “juris el sesinte conjunction’ the title and possession united. This is the technical and legal import of the terms, wseised of the legal *430 title.” “Seisin,” means,“ra vi termini,” the whole legal title. A covenant of seisin is broken, if the covenan-have not the possession, the right of possesion, and the right, or legal title.
It would, therefore, be difficult to imagine a case, jn which a party could be “seised" and yet, not have the right to sell and convey the legal title. “Seisin” is a “nomen generalissemum,” which includes the right to sell: “Omne majus continet in se minus." 3 J
Croghan’s title is derived, as follows: . , , ,
, , , 1st. An act of the Virginia legislature of 1780, vesting the lots in Louisville, in certain persons, as trustees. III. Littell’s Laws, 540.
2d. A deed from a majority of persons, calling themselves trustees of Louisville, to Pitman, dated 4th September, 1783.
3d. A deed from Pitman to Woods, dated 8th February, 1810.
4th. A deed from .Woods to Lucket, dated 11th April, 1812.
5th. A deed from Lucket to Skidmore, dated 9th April, 1816. <
6th. A deed from Lucket, White, and Preston to Skidmore, dated 5th May, 1816.
7th. A deed from Skidmore to Croghan, 1st November, 1817.
The appellants object to the validity of the title, thus deduced; and urge the following reasons in support of their objection:
1st. That the persons, conveying as trutees had no authority to pass the legal title; and that their deed was never properly acknowledged or proved.
2d, That Pitman, by an endorsement on the deed from the trustees to him, assigned his right to the lot, to William Johnson, on the 6th September, 1785, from whom the legal title had passed to others, between whom and Croghan, there was no privity.
3dv That Lucket had a wife entitled to doweV, who had never relinquished.
*431 { 4th. That Augustus D. and Juliet White bad an interest in the lot, adverse to the ritle of Croghan.
5th. That those claiming under Johnson, liad, by á long continued possession, acquired a right to thé possession of the lot, and that in consequence of that right, one of them had recovered judgment, in an ejectment against Croghan.
These objections were all disregarded by the jury and court below, and we think properly.
By the Virginia act of May, 1780, Louisville was established and one thousand acres of land, declared to be forfeited by the patentee, thereof, John Con-nelly, was vested in eight trustees, with power in any four of them, to lay out lots, and sell and convey them; and to fill vacancies that might occur in the board of trustees by death or removal of any of its members.
In May, 1783, another act passed, providing that, as John Campbell, and Joseph Simon, held a mortgage on the one thousand acres of land, which had been appropriated for the town of Louisville, as the escheated land of Connelly, “all further proceedings, respecting the sale of the said lots, and lands, shall be, and the same are hereby suspended, until the end of the next session, of the general assembly.”'
By another act of October, 1783, so much of the act of May, 1780. as might affect the rights of Campbell and Simon, was repealed.
Another act of October, 1784, recognizing the sales which had been made of lots, directed, that the proceeds of such sales, should be collected and appro* priated towards extinguishing the mortgage of Campbell and Simon; and declared “that the titles of the purchasers of lots in the town of Louisville, under the said act of May, 1780, shall be deemed valid, against the claim of the said John Campbell and Joseph Simon, and their heirs or assigns.”
The deed to Pitman, is dated September, 1783, and signed by three of the trustees, appointed by the act of 1780., and by James Patten, as a trustee, appointed by the board, to fill a vacancy; and attested by two witnesses.
*432 On the trial, the original deed was read, on proof of the death and hand writing of the subscribing witnesses; a copy, certified by the clerk, was also ■read, on which there was this endorsement, “at a court, held for Jefferson county, April Gth 1785, the above deed was acknowledged by the trustees of Louisville, to Buckner Pitman, and ordered to be. .recorded.”
On the original, was the following endorsement! “1784, April court, O. record, recorded and examined, Book. A. pa. 147.”
A resolution of the trustees of Louisville, appointing James Patten, a trustee, in June 1.783, was also read in evidence.
The plaintiffs offered in evidence, the order book of the county court, of Jefferson, for 1784-5, to shew that no order appeared in it, for the admission of the deed to record, at April court, 1784; but that there was such an order, at April court, 1785; but the court refused to admit the order book.
Three objections are urged against this deed, by the appellants:
1st. That Patten was not a trustee.
2d. That in 1783, the trustees had no power to convey.
3d. That as an original, the deed ought not to have been read to the jury; and passed no title, because it was not attested by three witnesses.
4th. That the deed was not regularly proved by three witnesses, nor acknowledged, and recorded Within eight months, and therefore, passed no title; and consequently, the copy was inadmissible.
It is as well ascertained that Patten was a trustee, in September, 1783, the date of the deed, as such a fact is susceptible of being proved.
The order of the trustees appointing him one of their board, ought to be conclusive; but if it were not, the fact that he acted in that capacity, in conjunction with others, who were appointed bylaw; that his authority was never doubted or questioned; that all who have ever held or claimed the lot, have *433 looked to the deed, signed by him, as the only source of their right; and that upwards of forty years had elapsed, during which, the lot had been held and occupied under this deed alone, constitute a mass of presumption, which it would be difficult, if not impossible, to resist,
Deed, sealed & deiivered, as tween the PaJ'tie<'> "'^fa-^alion^remtd-ing or depoñt-ins f°record
No title can ever be secure, if this is to be declared invalid for want of any better evidence of the authority of Patten, to act as a trustee. We deem it unnecessary to cite any of thé numerous authorities, in support of this conclusion.
Whatever might be the proper construction of the suspending act of May, 1783; and whatever practical operation it alone might have on the deed, the subsequent acts leave no room for questioning the validity of the deed, so far as the legal right to convey the lot, can operate. The acts taken “in pari materia,” shew that the only object of suspending sales, was to save the rights of Campbell and Simon. They shew that those rights were secured; and the net of 1785, positively recognizes the sales, that had theretofore been made, and legalizes the proceedings of the trustees. So far, therefore, as the right of the trustees, to sell and convey, the legal title, can have any effect, there can remain no doubt that a complete right was vested in Pitman by their deed.
No reason is perceived for the objection to the original deed. If it had never been recorded, or proved, or acknowledged for registration, it would vest the legal title, (no other objection being shewn to it) except so far as the rights of bona fide creditors, or purchasers, might be concerned. The act of 1748, which was the law in force before 1785, required, that deeds should be actually recorded within eight months from their execution or acknowledgement. And it also required the attestation of three witnesses, as every subsequent act did, until that of 1810, of this state. But the 4th section of the act of “’48,” shews that these requisitions were made for the benefit of innocent purchasers and creditors, alone, and that without the required attestation, or recording the deed, if otherwise good, would pass the title, as between the parties to it. The three witnesses were *434 necessary only to prove the deed, for recording, The '’‘'cording, was necessary only to secure (he title subsequent creditors and purchasers; and therefore, between the vendor and vendee, the title was not affected by an omission to record the deed, or to obtain the attestation of three witnesses, who were required only to prove the execution, in order to record it.
Proof of deed by one wit-eion’t"asfie* tween the parties thereto, Ttiemforp, writing of one subscribing-witness is suf-witnesses are dead.
The acts of 1785, and of 1796, also require the attestation of three witnesses; and that of 1810, requires the attestation of two only.
But a deed, sealed and delivered, passes the title as between the parties, without any attestation. The deed must be recorded or deposited, on proof or ac-knowledgement, to be recorded, for the benefit of creditors and purchasers, without notice. It cannot be recorded since 1810, on proof, unless there be two subscribing witnesses; hut, if it be not recorded, nor even deposited for recording, it is good between the parties.
The only difference between the act of 1748, and the subsequent acts,is, that the one required the deed to be rccoided in eight months, and the others required no more than depositing it in the proper office, on proof or acknowledgement, to be recorded.
As an original deed, therefore, to pass title to the vendee, it could be read on proof of its execution, whether three witnesses had attested it or not. The Pr00^ hy one witness would be sufficient, and as both witnesses were proved to be dead, evidence of the hand writing of one of them, was enough, to authenticate the deed, before tbe jury. So far then, the legal title would be valid, unless there had been proof that there were creditors or purchasers, who could hold the lot, unless the deed to Pitman, had been re-corc‘ecl‘ There is no such proof, or even intimation; and therefore, the fact is to be taken, as not existing. Besides, as the lot has been occupied, under Pitman’s deed, ever since its date, or nearly so, the possession of it, would be actual notice to the world, that tbe title was not in the trustees, or any individual, out of possession; so that it would be difficult to conceive of tbe existence of bona Jide creditors, or purchasers, *435 who could take advantage of any omission, to record the deed to Pitman. This objection to the evidence, and to the title, is unavailing. See Cotton vs. III. Monroe, 312.
From what has been said, it results, that it is not material whether the court erred or not, in suffering-the certified copy of the deed, as a recorded deed, to be read to the jury. But in this too, we conéur with the circuit court. The endorsement, shewing that the deed was admitted to record^in April, 1784, less than eight months from its date, is not contradicted by the order book, which was offered, but rejected by the court. We are not prepared to admit, that it was necessary that the order book should shew that the deed, was admitted to record. The official ondorse-menton the deed would be evidence to shew that the deed was acknowledged in April, 1784.
The silence of the order book, of that term of the county court, does not necessarily contradict the verily of the endorsement. The clerk might have omitted, through inadvertance or mistake, to make the entry,, in his order book. The endorsement shews that the deed was ordered to record, in April, 1784; and that it was recorded in book A. and page 147» This is not disproved, and is, therefore, to be accredited. Nor does the entry in the order book, in April,. 1785, necessarily contradict the endorsement, made on the original deed. It only shews that there was an acknowledgement by the trustees, in April, 1785» A re-acknowledgement at that time, might have been deemed necessary, or prudent, as the effect of the former acknowledgement might have been doubted, inconsequence of tiie suspending act of 1783.
But there is a. general and effectual answer to this, as well as all the other objections, to the title derived from the deed to Pitman. It is found, in the efficacy of the lapse of time, and other incidental circumstances. These create presumptions, in favor of the validity of the title, which supply the place of positive .proof, of facts which, withouttheir influence,would be required.
Artificial or legal presumption, is arbitrary, inflexible and conclusive. It is the policy of the law, sub- *436 stitutedfor proof of facts, the establishment of which* moral testimony, or written memorials, is render-cd impossible, by lapse of lime. This kind of presumption, does not, in our opinion, apply to this case. But natural presumption, (or such conclusion from facts, as naturally,or by strong probability, will arise in a rational mind, enlightened by experience of cause and effect) must apply with a controling influence. This shews presumption may be counteracted, by opposing facts. And therefore, it is not absolutely,. conclusive. Such is the presumption, that after twenty years, a bond is paid off, a mortgage satisfied* the mortgagor remaining all the time in possession, tlle equity of redemption released, the mortgagee* having enjoyed the possession twenty years, or the legal title, conveyed to a purchaser, after twenty y»*»’ Pos““i“> fa- fa-
After twenty years, bond is presumed _ mortgagedsa-'’ tisfied, equity of redemption, SnS 0(i'*
These may ’be all combatted by proofs or explanations, inconsistent with the inference of reason and from the isolated facts, which of themselves, would establish the presumptions. And hence, their consideration, belongs to a jury. As they are not exclusively conclusions of law, courts will not decide on them, but leave them to the jury, on hypothetical instructions,
A jury may presume a deed, when neither the chancellor, nor law judge, will or can. Starkie, 1235;, Ib. 1216; Ib. 1227; Peake Ch. 25. Without some opposing probability, a jury will presume a deed after a possession for twenty years, by one who had purchased the land, which, in consequence of his purchase, he shall have so long occupied. II. Williams vs. Saunders, 175, a; Starkie 502; Ib. 1243; Ib. 989; Ricard vs Williams, VII. Wheaton, 59.
And under cogent circumstances, it is affirmed by Story, in VII. Wheaton, 109 — 10; that a deed may bq presumed, in less than twenty years.
Grants may he presumed, from lapse of time. XII. Coke, 5; and most of the above authorities. In II. Henning and Munford, 370, a grant was presumed* after forty-four years. Generally, whatever will toll the right of entry, will create a presumption of a conveyance of the legal title.
Endorsement, without seal, on deed, does not pass legal title.
Covenant of seüin is not broken by an outstanding equity,
Every thingr necessary, to the validity of a collectors deed, will be presumed, after twenty years, if it be shewn, that he was collector of taxes, which were committed to him, XIV. Massachusetts Reports, 145; Ib. 177; X. Ib. 105.
It is a maxim of law, which the facts will apply forcibly, to this case, that “omnia presumimtur, rite et solemniter, esse acta, donee probetur, in eontrarium.”
It is also a maxim, which is equally applicable, that when title is proved, every collateral thing, necessary to its validity, will be presumed. This maxim we know, is usually applied to collateral acts or facts, which are rendered necessary “ex institutione homines,” and not to those, which are required ‘Hnstitutione legist VI. Coke, 38. Ba. Ab. Evidence 639. But the facts, which characterize this case, would authorize' the presumption, that every thing, necessary to the perfection of the title, has been legal, whether it be authority, to make a deed, or the execution, or proof, or acknowledgement, or recording a deed, according to law. If there had been no positive proof, of a deed, the jury would infer, that one had been made. The trustees of Louisville, could not, on the facts of this case, recover the lot, in any suit, known to the law. The title therefore, must be considered in its origin, complete and indisputable.
The endorsement to Johnson on Pitman’s deed, does not invalidate, or impair the title transferred by Pitman to Woods. It is not a deed. ^ It is without seal. After it was made, the legal right, still remained in Pitman. A covenant of seism, is not broken by an outstanding equity. Hence, even if this endorsement transferred qn equity to Johnson, Pitman was still seised, of the legal title. Johnson not having a legal title, his deed, and those which succeeded it, under his right, did not vesta legal title to the lot.
Whether Lucket had a wife or not, when he Conveyed, does not appear, with satisfactory certainty, His deed is signed and acknowledged, by himself alone. It purports in the body of it, to be a deed by Lucket and wife; and this is the only evidence, that he had a wife. This would scarcely he sufficient evidence that he had a wife. The deed might have *438 been written by some person, who was mistaken m supposing, that he had a wife, or he might have been with a woman, who was ostensibly, but not legally his wife, and therefore, not entitled to any legal interest, in the land which it would be necessary for her to relinquish, by acknowledging the deed; or he might have had a wife, when the deed was written, but none when it was acknowledged. However, it is not necessary to decide, what should be the effect of the deed on the question of Luckel’s havinga wife. For if he had one, who would be entitled to dower, in the event of her survivorship, that fact would not affect the seisin of Croghan, nor of the alienee of Lucket. The right to dower in the estate of a living man, is contingent and remote. It is not á vested or existing right. The husband has the w',0‘'e title, during his life; and consequently, imparts it, without diminution, to whomsoever he conveys it, by deed of general warranty. In a suit on a covenant of seisin, the only question is, was ihc covenantor seised of the legal title, at the instant when he made the covenant. If he were, his covenant is not broken. It is a covenant “inpresentí,” and cannot be affected by supervenient facts or events.
S"i ant of seisin*only, question is, wascoveBan-legaftitie” at instant he' marie the covenant?
Covenants of ranty, or for quiet enjoyment,cannot be broken until eviction.
Covenant of seisin, ie broken instant it is made, or never.
Suit may be maintained, on covenant of sei in, before eviction.
In this respect, it is unlike a covenant of general warranty, or for quiet enjoyment. JLhese are essen-tiaily and exclusively prospective, and cannot be broken without eviction. I
The covenant of seisin is broken the instant it is-made, or never. I. Touchstone, 169-70; Dyer, 303; IX. Coke, 60; Greenby and Kellog vs. Wilcocks, II. Johnson’s Rep. 1; Hamilton vs. Wilson, IV. Ib. 72; Pollard vs. Dwight, IV. Cranch, 429.
A suit may be maintained, therefore, for a breach of a covenant of seisin, before and without any eviction. It is a remedy for trying the title, in advance, before the covenantee has been disturbed in his title or possession. If it turn out, on being scrutinized, to have been good, at the date of the deed, then the covenantee must be satisfied, and can have no right of action or cause of complaint against the covenantor, unless, by a subsequent breach of the covenant of *439 wái'ranty, or of quiet enjoyment, a new causé of action may oceur, on one of these latter covenants.
Covenant ot c^venant'a*' gainst incum-brances. Therefore, rif¡htofdow- or, or other e9u’-tal>le breach ofco-° venantof ,cisin-
The rights of the parties in a suit, for a breach of ix covenant of seisin, must be determined by the con* dition of the title, at the date of the covenant. If the covenantor had not a perfect title, at the date of his deed, he is responsible to the covenantee, for dam* ages; although, he may have.acquired the title before the trial, or even the institution of the suit; and consequently, as the rule is reciprocal, and the reason of it equally applicable to both parties, if the cove-nantor were seised of the legal title, at the date of his coveuant, no subsequent event affecting it, can render him responsible for a breach of his covenant of seisin. II. Saunders, 171, c; Morris vs. Phelps, V. Johnson’s Rep. 53.
The covenant of seisin, is not a covenant against incumbrances. And therefore, no equitable lien on the land conveyed, will create a breach of the covenant of seisin. Hence, if after a mortgage, but whilst the fee is in the mortgagor, he sell and convey thernort-gaged premises toa stranger, and covenant-with him, fhat he is seised, the existence of the mortgage is no' breach of the covenant. And according to this princi-pie, as the supreme court of New York, had decided in Sedgwick vs. Hollenback, VII. Johnson, 380; and in Runyon vs. Mersecaw, XL Ib. 538; and in other Cases, that a mortgagor, before foreclosure is seised of the legal estate, therefore it Was decided in Stanard vs. Eldridge, XVI. Johnson, 255, that a covenant of seisin to a stranger, by a mortgagor, before a foreclosure of the equity of redemption, is not broken by the existence of the mortgage.
The expectant right of a wife to dower, whilst her husband is living, cannot be, if it be any thing in law, more than an incumbrance, and a very contingent one. Perhaps the husband may survive the wife. Her potential claim to dower, therefore, cannot have even as much effect on the covenant of seisin by the husband, as an equitable lien or other existing incum-brance would have. It is manifest then, that if if. had been clearly proved that Lucket had a wife when he conveyed the lot, that fact would not tend, *440 in the slightest degree, to shew a breach of the covenant of seisin.
But there would be another answer to this objection to Croghan’s title. Lucket’s deed was acknowledged more, than seven years before the trial. If the wife be proved once to have been alive, she will be presumed, for a reasonable lime, to be still living, until the contrary be .shown, II. Roll. Repts. 461. But what this reasonable time shall be, is the question. In England, it has been decided, in analogy to the statute of bigamy there, that after the expiration of seven years, from the last time that the wife was shown to be alive, she will be presumed to be dead. Starkie, 218: Ib. 457. There being asimilar statute in Ken-tacky, it might not be unreasonable to establish the same rule here. If Bucket ever had a wife, it might, therefore, be presumed that she wras dead when this case was tried, or at least it might impose on the appellants the burthen of proving that she was then living. Unless she was not only then living, but shall survive the husband, the title remains unincum-bered by Dower. There is not only no proof that Augustus D. and Juliet White,had any legal right to (he lot, but it‘is'pretty evident that they had not. The deed to their mother, from which it must have been supposed that they derived some title, is “to her and her heirs,” in the usual form. These are words of “limitation,” and vested a fee simple estate in her. And, therefore, she having conveyed her title, her children have no interest whatever, in the lot, derived from the deed to her. __
It does not appear that those claiming under Johnson, had been in possession 20 years. And if they had been, as they held under the title of Pitman, and by executory contract, merely, their possession could. hardly be considered adverse to Pitman, or to those claiming by deed from him.
Whatever effect a judgment in ejectment against Croghan, in favor of these claimants, might have in showing that he was not seised, cannot be material in this case. Because the judgment does not, of itself, show a breach of the covenant of seisin. If the appellants had a right to use this judgment as evidence *441 .«gainst Croghan, it would only prove the fact that there was a judgment. It would not prove that Croghan had not title in 1818, nor that those who obtained the judgment had a paramount title. Nor does the judgment show the demise. Hence it does not appear whether the demise was laid before the date of Croghan’s covenant. The judgment was rendered in October, 1824, more than six years after the date of the covenant; the demise may have been laid after 1818; and as a recovery in ejectment, when properly used as evidence to prove trant of title in him, against whom it was had, could only prove it to the extent of the demise, consequently, this judgment alone, cannot show that Croghan had not title in 181%. An eviction is not, “per se,” evidence of a breach of a covenant of seisin. The covenantor‘must be shown not to have been seised at the date of his deed. Aft eviction, and consequently a judgment, will not show this, unless it be proved that the successful party had a superior title. Proof of such title, without either judgment or eviction, would ¡show a breach of the 'covenant of seisin. And hence, if it had been proved that any person, unconnected with Croghan, had the fee, or had, before 1818, acquired the right to the possession of the lot, by 20 years’ continued adverse occupancy, Croghan would, thereby, be rendered liable to the appellants, on his covenant of seisin. It is not proved that any person had acquired any such right. The judgment does not show it. And the testimony of the witness who swore that the judgment was obtained on an adverse possession of 20 years, certainly does not prove it. This is an attempt to prove what witnesses swore on the trial of the ejectment. But it does not prove that what they swore was true. Such testimony, for such a purpose, would be illegal and inadmissible. The witness did not swear thafthere had been 20 years’ possession, adverse to Croghan. If this had been shown, Croghan would have been convicted of a breach of bis covenant. There is nothing in the record, which does prove, or even tend legitimately to prove it. Nor is it probable, from any thing in the record, that snch a fact exists, because all the claimants seem to have held under *442 the same title, and the possession under Johnson, was without a legal title by deed.
if, atdate of covenant of sm’at)y fee,<,rby 20 years'’ adverse °°ou" rigkt ta possession, there isa breach*
Ücctird o?™ suitTwhich a party cannot use to defend aoTbe nsed1' against him.
^e,e *s Jeí a sponger objection to using the judgment in ejectment, or the whole record of the suit, as evidence in this sgit, against Croghan. The appellants who attempted, to use it, were not cotf-^u(^e^ by ik In a suit against them, it would not be evidence. ' Ought they then to be permitted to make use of it against Croghan. The rule is reciprocal. If the record could not be evidence against the appellants, it should not be for them. Croghan, if he had succeeded in the ejectment# could not have introduced the judgment in his favor, as evidence that' he was seised of the legal title. As, therefore, the record could not be evidence for him, i.t ought not to he read against him. If, by adverse possession by another, or in any other way, Croghan’s legal title had been affected, it should be proved, as.other facts arc usually established. If it had been proved in the trial of the ejectment, that there had been 20 years’ ^possession adverse to the right of Croghan, it might have been proved by the same witnesses, in this case. And if any such fact had been thus established, the appellants would have been entitled to judgment. But, for the reasons which have been suggested, the circuit court did right in disregarding the judgment, and in excluding the record in the ejectment.
No other objection to Qrogh'an’s title having been made, or perceived, than those which have been noticed by the court, the conclusion, therefore, is, that there was no proof of any breach of his covenant of seisin<
The points growing out of the instructions and of motions for instructions have all, except one, been virtually decided in the foregoing examination of the question of seisin. That one is involved in a motion by the appellants for an instruction, “that the jury had a right to presume a conveyance, by Pitman to Johnson, anterior to that to Wood. The court refused to give the instruction. And whatever its reasons may have been, its opinion was correct. The proposition was abstract. There was no proof of 20 years’ continued possession under the purchase by *443 Johnson, or any other possession which would authorize the presumption that Pitman had conveyed to him the legal title. The bare fact of a sale would not create the presumption of a deed, without a long possession taken and held, in consequence of the sale, and not consistent with any other right than that acquired by the sale/ There being no proof of any such facts., the court did not err in withholding the instruction.
Denny and Hoggin, for appellant; Crittenden and Brown, for appellee.
Judgment affirmed.