## Bertram and Maupin v. Morgan.

## Hildreth v. Same.

(Decided February 2, 1917.)

### Appeals from Clinton Circuit Court.

Sunday—Illegality of Contracts Made on Sunday.—An action arising out of a contract made on Sunday cannot be maintained in a court of law or equity, either to enforce its performance or compel its rescission; the reason therefor being that its illegality imposes the same disability upon each of the parties and leaves both in the situation in which their voluntary and wrongful act placed them.

E. BERTRAM for appellants.

S. G. SMITH for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SETTLE—Reversing.

The amount in controversy in each of these appeals being $365.00, the appeal in each has been prayed in

this court, as provided by the act of May 26, 1914, and rule 20 of this court, regulating appeals in civil cases when the amount in controversy, exclusive of interest and costs, is as much as $200.00 and less than $500.00; and as the two appeals are from different judgments in a single action and involve the same questions of law and fact, they will be considered together, and the decision of the court in each declared in the one opinion.

The appellants, J. A. Bertram, M. A. Maupin and E. P. Hildreth, partners in the milling business under the style of "Spring Creek Roller Mill Company," were jointly sued in equity by the appellee, J. E. Morgan, in the Clinton Circuit Court, to rescind a contract, which the petition alleges was made by appellee with them, through the appellant, J. A. Bertram, on Sunday, January 30, 1916, whereby they sold to him, for $365.00, then cash in hand paid, a pair of mules, which were, on the same day, delivered to him.

It was alleged in the petition as a ground for the rescission of the contract, that it was made on the Christian Sabbath, and, therefore, void, because violative of good morals, against public policy and contrary to law; and that neither of the parties to the contract is a member of any religious society which observes any other day of the week than Sunday as the Sabbath. The petition also alleges that appellee, after the purchase of the mules, tendered and offered to redeliver them to the appellants in as good condition as when they were received by him, but that they would not accept them; and that he is yet ready and willing to return the mules to them whenever they express a willingness to receive them. The petition also alleges that appellee, in a few days after the purchase of the mules, discovered that one of them was diseased; but the character of the disease is not mentioned, nor is it stated whether it is temporary or permanent, and no damages were claimed by reason of such diseased condition of the mule; the only damages claimed being the cost—$1.00 per day—of feeding and caring for the mules from the date of the contract down to the institution of the action.

It is apparent from what has been said of the averments of the petition, and also from the prayer thereof, that the only relief sought by appellee in the action was the rescission of the contract, because made on Sunday; and compensation for the keep of the mules.

The appellants, J. A. Bertram and M. A. Maupin, being duly summoned to the first term of the Clinton Circuit Court coming on after the institution of the action, filed a general demurrer to the petition, which the court overruled; to which ruling they took an exception. As Bertram and Maupin failed to plead further, the court, without expressly rescinding the contract as prayed by appellee, entered judgment in his favor against each of them for $365.00, with interest from the date of the judgment, and costs of the action; and, as the appellant, E. P. Hildreth, had not been summoned, continued the case as to him, directing that an alias summons issue against him. The appellants, Bertram and Maupin, each entered an exception to the judgment. The appellant, E. P. Hildreth, was later served with summons, and at the succeeding term of the Clinton Circuit Court he, too, filed a general demurrer to the petition, which was also overruled by the court, to which ruling he excepted. No further defense being interposed by him in the action, the court entered judgment against him in favor of appellee for $365.00, with interest from the date of the judgment, and costs; to which judgment he at the time excepted. This judgment, like that against the appellants, Bertram and Maupin, did not, in terms, rescind the contract for the purchase of the mules, as prayed by the appellee; but, unlike that judgment, did direct the return of the mules to appellants by appellee, without fixing any time for his doing so.

The sole question presented for decision by each of the appeals is: Was appellee entitled to the rescission of the contract, or to recover the amount paid by him for the mules, because the contract was made on Sunday?

In numerous cases decided in this jurisdiction such contracts have been declared void and unenforceable. As at the common law contracts entered into on Sunday were as valid as those made on any other day, the doctrine that contracts made on Sunday are void depends alone on statutory enactment; and no principle is better recognized than that a contract which violates a statute is void. We have in this state such a statute (Ky. Statutes, sec. 1321). In some states the validity of a Sunday contract has been made to turn upon the question whether it was executory or executed, it being held void

if executory and valid if executed. But in this state the rule is otherwise, and the fact that the contract is executory or executed is not to be considered in determining its validity—if made or completed on Sunday, it is contrary to the statute and, therefore, void.

If the performance of a contract made on Sunday cannot be enforced, it would seem equally true that the rescission of such a contract cannot be compelled. On this subject it is said in 37 Cyc. 567:

"It is the rule in a few jurisdictions that a contract void because made on Sunday, may be rescinded, provided the party rescinding restore to the other party whatever he has received under the agreement. However, the weight of authority is to the effect that such a contract may not be rescinded on account of its illegality, as the parties are *in pari delicto* and the court will refuse its aid to either. Neither party may recover back the property or the purchase money."

In Slade v. Arnold, 14 B. Mon. 232, Arnold was the owner of a stallion, which Slade undertook to castrate and insure his recovery from the operation if paid $1.00 for its performance, it being his custom to castrate horses for 50 cents without, and $1.00 with a warranty of recovery. The horse died from the castration, and suit was brought by Arnold against Slade upon the warranty to recover the value of the horse. In refusing the recovery, the court said:

"By law (Rev. Stat. 265), all work or business on the Sabbath is prohibited, except the ordinary household offices of daily necessity, or other work of necessity or charity. And the simple question is, whether a contract made on the Sabbath day, having for its consideration the performance of a work on that day, which is prohibited by law, can be enforced by either party; and, we think it can not.

"The general doctrine is, that a contract for the performance of that which is either *malum in se,* or *malum prohibitum,* will not be enforced in a court of justice; and, it is also a general rule, that a contract will not be enforced by the power of the law, if any portion of its object or consideration was a contemplated violation of public policy or moral duty. (Steele v. Curle, 4 Dana 384.)

"The performance of any work on the Sabbath day being expressly prohibited and the contract, in this

case, having for its consideration the doing of a work on that day, cannot be enforced. Aside from any considerations of public policy and moral duty, the act which the contract had in contemplation was to be performed on the Sabbath day, which is in violation of a positive statute." See also Murphy v. Simpson, 14 B. Mon. 337.

A very interesting discussion of this subject may be found in Cranson v. Goss, 107 Mass. 439, 9 Am. Rep. 45, in the opinion of which it is said:

"The ground upon which courts have refused to maintain actions on contracts made in contravention of statutes for the observanec of the Lord's day is the elementary principle that one who has himself participated in a violation of law cannot be permitted to assert in a court of justice any right founded upon or growing out of the illegal transaction. The general principle was long ago stated by Lord Mansfield, with his usual completeness and felicity of expression: 'The objection that a contract is immoral or illegal, as between plaintiff and defendant, sounds at all times very ill in the mouth of the defendant. It is not for his sake, however, that the objection is ever allowed; but it is founded on general principles of policy, which the defendant has the advantage of, contrary to the real justice, as between him and the plaintiff; by accident, if I may so say. The principle of public policy is this: *ex dolo malo non oritur actio.* No court will lend its aid to a man who founds his cause of action upon an immoral or an illegal act. If, from the plaintiff's own statement or otherwise, the cause of action appears to rise *ex turpi causa,* or the transgression of a positive law of this country, then the court says he has no right to be assisted. It is upon that ground the court goes; not for the sake of the defendant, but because they will not lend their aid to such a plaintiff. So, if the plaintiff and defendant were to change sides, and the defendant were to bring his action against the plaintiff, the latter would then have the advantage of it; for, when both are equally in fault, *potior est conditio defendentis.'* Holman v. Johnson, 1 Cowp. 343. It is upon this principle that a bond, promissory note, or other executory contract, made and delivered upon the Lord's day, is incapable of being enforced, or, as is sometimes said, absolutely void, as between the parties."

In Myers v. Meinrath, 101 Mass. 366, 3 Am. Rep. 368, it was held that the rule that no action based upon a contract made upon Sunday can be maintained in a court of law or equity, either to enforce its obligations or to secure its fruits, is settled beyond controversy; and that in such cases the defense of illegality prevails, not as a protection to the defendant, but as a disability in the plaintiff.

In Thompson v. Williams, 58 N. H. 248, it is said:

"The maxim, *in pari delicto*, etc., was not established for the benefit of one party, or of the other. The law does not leave the weaker at the mercy of the stronger, nor give the vendor a remedy by allowing him to retake the property illegally sold. It leaves the parties where their illegal contract left them. When executed, it will not assist the party who has parted with his money or property to recover it back; when executory, it will not compel performance."

In Block v. McMurray, 56 Miss. 217, 31 Am. Rep. 357, it was held that one who makes a sale on Sunday can recover neither the property, its value, nor the agreed price.

In Troewert v. Decker, 51 Wis. 46, 37 Am. Rep. 808, it was held that no action may be maintained on an express promise to repay money borrowed on Sunday, and that its retention raises no implied promise on which an action may be maintained. Moore v. Kendall, 1 Chand. (Wis.) 33, 52 Am. Dec. 145; Crocket v. Vanderveer, 3 N. J. L. 856; Pike v. King, 16 Iowa 49; Ladd v. Rogers, 11 Allen 209; Smith v. Bean, 15 N. H. 578; O'Donnell v. Sweeney, 5 Ala. 467, 39 Am. Dec. 336; Dodson v. Harris, 10 Ala. 566; Pearson v. Kelly, 122 Wis. 660.

In Kelley v. Cosgrove, 83 Iowa 220, 17 L. R. A. 779, we find a case, the facts of which are very similar to those of the instant case, the only difference being that in that case there was an exchange of horses instead of a sale of mules as in this. The plaintiff, after a tender back of the horse received in the exchange, brought an action of replevin to recover possession of the horse he had parted with. In other words, he sought a rescission of the contract and the recovery of the horse he had formerly owned. In refusing the relief prayed, the court said:

"These parties met and exchanged horses on Sunday. The transaction was unlawful. . . . . The parties were alike in the wrong, and the law makes the same presumptions for and against each. If this exchange had been made on a secular day, there could be no pretense of the plaintiff's right of recovery. The question is, therefore, one of a naked legal right, not to relief from the consequences of a violated law, but to invoke the aid of a violated law to relieve them from what would otherwise be legal. It is well settled that the law will not aid the parties to enforce a contract made on Sunday. Thus if A sells his horse to B on Sunday on a credit, the law will not aid him to enforce a payment. It will sooner permit him to suffer the loss. Much less will it, if he sells his horse on Sunday, and receives in money the full value thereof, assist him on Monday to return the money and regain his horse. The supposed case as against appellants is not stronger than the one at bar. . . . . This case rests, then, upon this proposition: If a party, in violation of the law, parts with his property on Sunday, will the law for that reason alone aid him to regain it? Without hesitation we answer, 'No.' The late case of Foster v. Wooten, 67 Miss. 540, while it sustains our answer to the query, is of much broader significance, and we cite it only to the extent of its bearing on the question before us. It is there said: 'Grant, then, that the sale was made on Sunday, what is the rule of law on such state of facts? Nothing more than absolute non-action. It will give neither party to the contract any assistance, nor listen to any complaint. It will leave the parties where it finds them. That is the extent of the rule.' "

Our investigation of the question under consideration convinces us that the great weight of authority is to the effect that an action arising out of a contract made on Sunday cannot be maintained in a court of law or equity, either to enforce its performance or compel its rescission; the reason therefor being that its illegality imposes the same disability upon each of the parties and leaves both in the situation in which their voluntary and wrongful act placed them. This doctrine seems to be recognized in the numerous cases involving Sunday contracts decided in this jurisdiction, though in none of them does it appear that the rescission of a Sunday contract was the relief sought. We find, how-

ever, one case, that of Greene v. Southworth, 2 Ky. Law Rep. 233, cited in a footnote to Hale v. Harris, 5 L. R. A. (N. S.) 295 (also found in 28 Ky. Law Rep. 1172), which the author of the note regards in conflict with the great weight of authority. This conclusion was based on the meager abstract of the opinion contained in 2 Ky. Law Rep. 233, quoted in Hale v. Harris, *supra*. Though not marked to be officially reported, the opinion in Greene v. Southworth is published in full in 11 Ky. Opinions 82, and a reading of it will show that the action was not one to rescind a contract, but one brought by Southworth against Greene to recover the amount of a note. The answer of Greene set up certain credits to which he claimed to be entitled on the note; and, in addition, pleaded that it was void because executed on Sunday, upon which ground its cancellation was prayed. The opinion is mainly devoted to a discussion of the evidence as to the credits, which was very conflicting, and what it says with respect to the defense that the note was executed on Sunday is contained in the brief closing paragraph of the opinion, which is as follows:

"As to the execution of the note on Sunday, it seems that it was executed in lieu of another note for a like amount, its validity not being questioned, and the (original) note delivered up to the appellant. Before the latter can avoid the obligation to pay it, he must return, or offer to return, the consideration received for it. It would be unjust to cancel the note in controversy and permit him to retain the note delivered to him."

Obviously, it would not have been right to permit Greene to escape liability upon the note sued on, although it was executed on Sunday, without the return by him to Southworth of the original note in lieu of which it was given. The original note was not executed on Sunday and if the one sued on was void, because executed on Sunday, its cancellation would have revived the liability of Greene upon the original note, the possession of which he had obtained by the execution of the last note.

So, if the relief asked for by Greene had been granted, he would have profited by the illegality arising from the execution of the note on Sunday, and the loss resulting therefrom would have fallen altogether upon Southworth. It is patent, therefore, that Greene v. Southworth is not actually in conflict with the weight of

authority or the conclusion at which we have arrived in the instant case.

The same is true of Hale v. Harris, *supra*. In that case the action was one in equity upon a note of $305.00 and to enforce a mortgage lien given to secure its payment; the note and mortgage having been executed to Hale by Harris, his wife and daughter at the suggestion of R. E. Stanley and others, candidates, respectively, for certain offices in Floyd county. R. W. Harris was himslf a candidate for jailer, and the money he obtained on the note and mortgage was his contribution to a campaign fund to be used for the joint benefit of himself, Stanley and others running on the same ticket with him. It appeared that Stanley undertook to furnish R. W. Harris the money on the note and mortgage if Hale would surrender to Stanley a note of $300.00 the latter was owing him, for the note and mortgage of R. W. Harris. To this Hale and R. W. Harris both agreed, which agreement was made on Saturday, the note and mortgage executed on that day, and the mortgage then acknowledged and recorded. The note and mortgage were also given to Stanley on Saturday and were by him turned over to J. P. Harris, a brother of R. W. Harris, the maker of the note and mortgagor, with a request that he deliver them to Hale, obtain from him Stanley's note and upon Stanley's receiving the note he would let R. W. Harris have the money on the note and mortgage executed by the latter to Hale. J. P. Harris did not, however, deliver the note and mortgage to Hale until the following day, which was Sunday, but when he did so he received from Hale, Stanley's note which he delivered to the latter and thereupon Stanley paid to him for R. W. Harris the $305.00, which he had agreed to furnish him on the note and mortgage that he had executed to Hale. It will thus be seen that the facts surrounding the transaction were very much like those in the case of Greene v. Southworth. By his acceptance of the Harris note Hale was induced to surrender Stanley's note and Harris could not restore it.

Several grounds of defense were relied on in the answer of R. W. Harris to the petition of Hale. One of these defenses was that the note and mortgage were invalid because executed on Sunday. The several grounds of defense were sustained by the judgment of the cir-

cuit court, but, on appeal, we reversed the judgment, and in dealing with the defense that the note and mortgage were void because executed on Sunday, we, in substance, held that R. W. Harris was estopped to rely upon such defense, quoting in support of this conclusion the excerpt from Greene v. Southworth, contained in the footnote to the opinion in Hale v. Harris, 5 L. R. A. (N. S.) 295. It is manifest that neither Hale v. Harris nor Greene v. Southworth, *supra,* states a rule that would allow the rescission granted in the instant case.

It follows from the views we have expressed that the petition fails to state a cause of action against the appellants or any of them, and that the circuit court erred in overruling their several demurrers to the petition. Wherefore, the appeal prayed in this court by the appellants, Bertram and Maupin, and that of the appellant, Hildreth, are granted; the judgment appealed from reversed, and the cause remanded to the circuit court with directions to set aside each of the judgments, sustain the several demurrers to the petition, and dismiss the action.