## Gover's Adm'r v. Waddle et al.

(Decided Nov. 1, 1932.)

VIRGIL P. SMITH for appellant.

B. J. BETHURUM and WALTER N. FLIPPIN for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Reversing.

On the 22d day of March, 1917, S. Q. Gover executed and delivered to his daughter, Ola Waddle, and her husband, Samuel Waddle, a deed for a tract of land in Pulaski county. As the consideration for the conveyance as therein recited the grantees assumed to pay a mortgage of $250 standing against the land, and to pay to the grantor the sum of $1,350 in annual installments of $100, with interest, which sum was evidenced by a note of even date, with a lien retained to secure the payment thereof. The deed also recites as a further consideration:

> "That the party of the first part with his brother-in-law Robert Cowan, is to continue to occupy during their natural lives, the property herein conveyed, in the same way and manner that they and each of them are now occupying as a home said property."

The grantor died in the year 1929, intestate, and George Waddle was duly appointed his administrator, and, as such, instituted this action against the grantees in the deed seeking to recover on the $1,350 note referred to therein. He alleged that the note had been lost or misplaced, but that no part of same had been

paid, and further asked that the lien retained to secure the payment of the note be enforced.

Defendants filed an answer and set-off. They denied that they executed a note to S. Q. Gover for the sum of $1,350 as recited in the deed, but admitted that they promised to pay him such sum as a part of the consideration for the conveyance in the manner recited in the deed, and that they had made payments on the indebtedness in sums set out in the answer, which in the aggregate amounted to $1,216.96, and for which sums they were entitled to credit. By way of set-off they alleged in substance that, prior to his death, the grantor in the deed, came to their home to spend the remainder of his life, and resided with them without expense for board or lodging until the 18th day of March, 1929, when he was stricken with apoplexy, and thereafter and up to the time of his death on November 9, 1929, he was so hopelessly crippled in mind and body as to be wholly helpless and to require constant nursing and attention; that he had no control of his organs of elimination, and required the same nursing and care as an infant; that the services rendered and for which recovery is sought were absolutely necessary to be given decedent, but that by reason of mental incapacity he was unable to contract for such services; that they waited on, washed, lifted, cared for, and nursed him from the time he was stricken until his death, a period of 240 days and that such services were reasonably worth $5 per day, or in all the sum of $1,200; that they had properly made and proven a claim against the estate for such sum for the services so rendered, and had presented same to the administrator for payment, but that payment had been refused.

By subsequent pleadings, issues were made as to the value of the farm conveyed by Mr. Gover to his daughter and son-in-law, as to other property owned by him at the time of conveyance or thereafter acquired by him, as to the disposition made of such other property, and also as to the manner and conditions under which the parties lived together. But a detailed statement as to such pleadings is unnecessary, since, in so far as pertinent, they will be referred to in a discussion of the evidence.

On final hearing the chancellor adjudged that the administrator recover of the defendants the sum sued

for with interest subject to certain specified credits, and that defendants recover on their set-off and counterclaim the sum of $1,200, which in addition to other credits left the sum of $695.04 due plaintiff as of the date of the judgment, with interest from that date. From that part of the judgment awarding recovery on the set-off and counterclaim plaintiff has appealed, but no cross-appeal has been prosecuted.

It is first argued that the daughter and son-in-law cannot recover on an implied contract for services rendered to decedent in his last illness. This argument is based on the general rule that a child or other person closely related to the beneficiary of such services and nursing, care, and attention cannot recover for such services in the absence of an express contract for compensation. In such instances, the presumption arises that because of duty, moral obligation, and natural affection the services rendered are gratuitous. But it is equally well established by a long line of cases that where it is alleged and established that the recipient of the services was mentally incapable of making a contract, and the services were of an unusual and extraordinary nature, a contract for compensation will be implied. See Kellum v. Browning's Adm'r, 231 Ky. 308, 21 S. W. (2d) 459, Jeffries' Ex'r v. Ferree, 175 Ky. 18, 193 S. W. 646, and cases cited in those opinions.

It is shown by evidence for appellees that after the first stroke suffered by Mr. Gover he was so impaired in mind and body as to be wholly helpless, and often unable to make his wants known to others. He had to be lifted in and out of bed, and his weight of about 200 pounds added to the difficulty and burden of this service. Lack of control of his organs of elimination and his inability to communicate his wants and needs to others resulted in the soiling of his person, clothing, and bed clothes, necessitating frequent baths and changing and washing of nightgowns, bed linens, etc. While relatives and friends who came in, sometimes rendered assistance, the burden in the main fell upon appellees, and especially upon Mrs. Waddle, who did the washing and had all the care of her father in the daytime when her husband was called away from home by his employment. The evidence of the attending physician and a number of other witnesses tends to indicate that Mr. Gover's mind was so impaired and unsound as to render him incapable of understanding or transacting busi-

ness. On the other hand evidence for appellant tends to establish that his mind was not impaired to an appreciable extent, and that while his paralysis did affect his powers of speech and caused him to hesitate when talking, he could talk intelligently and was capable of knowing and understanding business matters.

Necessarily, the chancellor must have concluded from the evidence that Mr. Gover was mentally incapable of making an agreement, and that the extraordinary nature of the services implied an agreement on his part to compensate appellees for such service, since otherwise he could not have found for them. And in view of the conflicting state of the evidence it cannot be said that there is not a reasonable and sound basis for his conclusion. And while the finding of a chancellor is not viewed or treated by this court in the same light as the verdict of a jury, it is a general rule that the chancellor's finding will not be disturbed if the evidence does nothing more than raise a doubt as to the correctness thereof.

It is further argued by appellant that such services as were rendered to decedent were contemplated and covered by the quoted provisions of the deed. Such may have been in the mind of the grantor when he made the deed, but the language adopted does not express such intention upon his part nor is it susceptible of such a construction.

Argument that appellees could not plead a set-off in absence of an allegation of an express contract to pay for the services is based on the provisions of subsection 2 of section 96 of the Civil Code of Practice. But implied as well as express contracts may be pleaded by way of set-off. Eversole v. Moore, 3 Bush (66 Ky.) 49.

It is finally urged that even if appellees are entitled to recover, the amount awarded by the chancellor is excessive.

On this issue as well as on all others there was a conflict in evidence. The attending physician gave as his opinion that the services rendered were reasonably worth $5 per day, but he based his opinion on the schedule of fees prevailing at hospitals. Wholly apart from any evidence on the question, it is a matter of common knowledge that practical nurses do not command

the same compensation as trained nurses. While there is evidence that Mr. Gover had to be fed, and assisted to and from the bed and in answering calls of nature, the evidence does not indicate that he required constant watching or attention, or that any one remained up with him during the night. Although the greater burden of the care and nursing fell upon appellees, the evidence indicates that a great deal of assistance was rendered by relatives and friends who visited the home.

From the record as a whole we are led to the conclusion that the recovery awarded appellees on their set-off and counterclaim is excessive and that $700 will fairly and adequately compensate them for all services rendered to decedent for which they seek to recover.

Judgment reversed, with directions to enter judgment in favor of appellees on their set-off and counterclaim for the sum of $700, which with other credits allowed will leave due plaintiff as of the date of the judgment the sum of $1,195.04, for which sum judgment with interest from that date will be entered.