## Blankenship et al. v. Green.
May 28, 1940.

W. E. Begley, Judge.

William Lewis & Son for appellants.

Luker &·Begley for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Affirming.

John Green instituted this action against Effie Green Blankenship, nee Effie Green, and her husband, Clyde Blankenship, alleging that he had legal title to and was in actual possession of a tract of land in Laurel county containing something over 125 acres made up of three boundaries described in the petition; that the defendants were setting up claim to same, adverse and

hostile to his right and title thereto and claiming that they are the owners thereof; that defendants had no interest in the land and their claim was unfounded and casting a cloud upon his title; that on November 19, 1924, defendants executed, signed and delivered to him a deed for the lands described in the petition and thereafter and on divers occasions had promised and agreed to acknowledge the deed but had failed and refused to do so; that by reason of such failure he had been unable to have the deed recorded; that he had opportunity to lease the land for oil and gas but could not do so because the deed had not been acknowledged; that by reason of defendants' failure to acknowledge the deed he had been damaged in the sum of $500; that he had been in actual possession of the land and paid taxes thereon since the deed was executed. He prayed that the title be quieted and defendants required to release all claim thereto and to acknowledge the deed; or that the master commissioner of the court be directed to make a deed to him for the property. The deed alleged to have been signed by appellants and delivered to plaintiff was made a part of the petition and filed as an exhibit.

Defendants traversed the allegations of the petition and in a second paragraph and by way of counterclaim alleged in substance that at the time of the institution of the action and long prior thereto appellant Effie Green had been the owner and in possession of the boundary described in the petition; that John Green sold and conveyed the boundary to her for a valuable consideration; that for several years she had permitted plaintiff to live upon, occupy and cultivate the land with the understanding that he would pay taxes and give her a part of the crops grown; that the occupancy of plaintiff of the land was as her tenant by sufferance and in no other way; that his claim to the land was casting a cloud upon her title. They prayed relief accordingly. The affirmative allegations of the answer were traversed by reply.

On final hearing it was adjudged that the deed referred to and filed as an exhibit with the petition was made, executed and delivered by defendants to plaintiff and that by reason thereof he became the owner in fee of the land described in the petition; that his title thereto be quieted from any claim of the defendants; that

defendants' answer and counterclaim be dismissed; that they recover nothing thereby and the master commissioner was ordered and directed to make a deed to plaintiff for the land described in the petition if within 10 days after entry of the judgment defendants failed or refused to make deed to plaintiff therefor. Defendants are appealing.

Some of the grounds argued for reversal call for a brief resume of the evidence. Appellee is something over 70 years of age and is the uncle of appellant, Effie Green Blankenship, who came to the home of appellee and his mother when she was about 11 years of age and resided there as a member of the family for about 25 or 30 years. By deed dated April 21, 1921, appellee deeded to his niece all his real estate for a recited consideration of $2,000 which she claimed to have paid him in cash then or thereafter. Appellee testified however that at the time he made the deed he was being threatened with suits and prosecution and conveyed the land to his niece in trust for his use and benefit in order to save it being subjected to payment of judgments that might be rendered against him; that his niece paid him nothing for the land and had no source of income and no money to pay for it; that he had promised his mother to give the niece a home; that it was agreed between them that she would have a residence property in London and another farm which he had purchased but for which deed had been made to her and that she and her husband would deed him the land in controversy; that pursuant to the agreement he wrote the deed and appellants both signed it and agreed to acknowledge it but delivered it to him before they had done so and thereafter refused to acknowledge same. A man who accompanied appellee when the latter claimed the deed was delivered to him testified that he was present and saw Mrs. Blankenship deliver to appellee an instrument which had the appearance of a deed, but which he did not read, stating that it was a deed. One witness stated that Mr. Blankenship came to his home about the time the deed was made and asked for a deed form, stating that his wife was going to convey the farm to appellee. But this witness had no form and another neighbor testified that Mr. Blankenship came to his home and got such form, stating that his wife was going to deed the farm to appellee, and in this he was corroborated by

another witness. Appellants denied that they agreed to deed the land back to appellee and testified positively that they did not sign the deed. A number of witnesses who were acquainted with the signatures of appellants testified to the genuineness of their signatures to the deed. Appellee testified that he paid the taxes on the farm and produced a number of tax receipts evidencing such payments but appellants testified that they paid the taxes for some years and that for others the taxes were paid by appellee pursuant to an agreement to do so when he leased the land from them. There is evidence that Mrs. Blankenship sold a large quantity of timber from the land under written contract, a copy of which she introduced in evidence, but appellee claims that he sold the timber but that the transaction was in the name of Mrs. Blankenship because the deed of record was in her. She also introduced in evidence a written lease for the farm purporting to be signed by appellee. He denied that he ever leased the land from her. Some years after the deed was made, Mrs. Blankenship executed an oil and gas lease covering the land. It provided that the royalties be paid to appellee but she testified that she did not know that provision was in the lease. At that time an attempt was made to get appellants to acknowledge the deed but they refused to do so. There is evidence that appellee made application for an old age pension and in which he stated that he had no property and in connection with an execution or attachment against him he made affidavit that he owned no property except a mare. He testified that at that time this litigation was pending and an officer who was present when the latter affidavit was made testified that in the conversation there was some reference to the land being involved in litigation.

One of the grounds argued for reversal is that the judgment is flagrantly and palpably against the overwhelming weight of evidence and should be reversed on that ground alone and in this connection it may be said there is a challenge to the competency of some of the evidence introduced over the objections of appellants and especially with reference to the genuineness of the signatures to the deed filed with appellee's petition.

From our recitation of the evidence it is not to be doubted that there is sufficient evidence to sustain the chancellor's finding that appellants signed and delivered

the deed to appellee. While it is true that the finding of a chancellor will not be given the same effect on appeal as will the verdict of a properly instructed jury, yet it is a rule of general application that the finding of the chancellor will not be disturbed where as in this instance it is substantially supported by the evidence. Thompson v. Dulaney, 255 Ky. 794, 75 S. W. (2d) 524; Henson v. Jones, 247 Ky. 465, 57 S. W. (2d) 498. Nor will such finding be disturbed where the evidence to the contrary does nothing more than raise a doubt concerning its correctness. Gover's Adm'r v. Waddle, 245 Ky. 652, 54 S. W. (2d) 19; Webster v. Webster, 269 Ky. 712, 108 S. W. (2d) 724.

Under section 494, Kentucky Statutes, the deed involved in this litigation would not be good against creditors or purchasers for value without notice since not recorded. And it could not be recorded because not properly acknowledged. Kentucky Statutes, sec. 501.

In the early case of Fitzhugh v. Croghan, 25 Ky. 429, 2 J. J. Marsh. 429, 19, Am. Dec. 139, the doctrine was announced that a deed properly signed although not acknowledged or recorded was good as between the parties and that rule has been consistently followed. Kerr v. Watkins, 234 Ky. 104, 27 S. W. (2d) 679, and other cases cited therein.

Appellants are invoking the rule of pari delicto, etc. The opinion in Bertram v. Morgan, 173 Ky. 655, 191 S. W. 317, 318, L. R. A. 1917B, 445, quotes from a foreign jurisdiction where relative to the maxim in pari delicto, etc., it is said:

"The general principle was long ago stated by Lord Mansfield, with his usual completeness and felicity of expression: 'The objection that a contract is immoral or illegal, as between plaintiff and defendant, sounds at all times very ill in the mouth of the defendant. It is not for his sake, however, that the objection is ever allowed; but it is founded on general principles of policy, which the defendant has the advantage of, contrary to the real justice, as between him and the plaintiff. * * * No court will lend its aid to a man who founds his cause of action upon an immoral or an illegal act.' "

That opinion recognized the general doctrine that

when such a contract is executed the law will not assist the party who has parted with his money or property and seeks recovery back or that when executory it will not compel compliance.

If under appellee's own admission concerning the reason and purpose for which he conveyed his property to his niece he were attempting to enforce an executory agreement to reconvey the property to him, appellants, notwithstanding their unjust enrichment at his expense, might invoke and shield themselves under the maxim of pari delicto, etc. However, such is not the case since appellee is not seeking to enforce the alleged agreement to reconvey the property to him but plants his cause upon an executed contract carrying such alleged agreement into effect. As is clearly manifest from the quoted excerpt which is in accord with all authorities on the question, courts have indicated that under the evidence for appellee appellants' refusal to reconvey the property would be contrary to real justice as between them and appellee; and that although the law for reasons indicated will not intervene to correct the injustice, a moral obligation rests upon the party gaining undue advantage to make restitution. If the evidence for appellee be true, then appellants were under moral obligation to carry out the alleged agreement which was sufficient consideration to support the deed which the chancellor found they had signed and delivered to appellee. While there is some conflict of authority concerning the sufficiency of a moral obligation as a consideration for an express agreement, it is generally recognized that a moral obligation insufficient to support an executory agreement will support an executed agreement between the parties acting in their own behalf. 12 Am. Jur. 590; 17 C. J. S., Contracts, sec. 90, p. 437; Park Falls State Bank v. Fordyce, 206 Wis. 628, 238 N. W. 516, 79 A. L. R. 1339.

Question is made concerning the competency of some of the evidence introduced by appellee, but if it be admitted that the challenged evidence was incompetent, there still remains sufficient competent evidence to fully sustain the chanceller's finding and therefore this court would not be authorized to disturb the judgment.

Judgment affirmed.