## Elam v. Alexander, et al.

(Decided February 16, 1917.)

## Appeal from Carter Circuit Court.

1. Adverse Possession—Parol Gift of Land.—Where a mother made to her daughter a parol gift of land and placed her in possession thereof, and such possession in the latter was actual, continuous and uninterrupted for fifteen years, to a well defined, marked boundary, adversely to the donor and all others, the donee thereby acquired the fee simple title to such land; nor does the fact that the land given by the mother to the daughter was obtained by the mother through, or by means of, a parol exchange of lands with the former owner; as the daughter's actual, continuous possession of the land for fifteen years, will be regarded as also adverse to the former owner and bar any recovery of the land after that period by him.

2. Adverse Possession—Parol Gift of Land.—Where the donee by parol gift of land dies after acquiring the title thereto by actual, adverse possession of fifteen years, survived by her husband and children; and, at the time of the mother's marriage and when she took possession of the land, a statute of the state, then existing, gave the husband as survivor, an estate for life in the land as tenant by curtesy, such land at the death of the mother descended to her children, subject to the life estate of the husband therein as tenant by curtesy.

3. Libel and Slander—Slander of Property or Title—Injunction.—The possession of the land by a life tenant will be regarded as the possession of the remaindermen. The latter, unless the life tenant be guilty of waste, may not deprive him of the possession of the land during the continuance of the life estate. If, however, the life tenant attempts to repudiate the title of the remaindermen by proclaiming that they have no title and that the fee simple title is in himself or another, such action and declarations will constitute slander of the title of the remaindermen and cast a cloud thereon, justifying the granting at their suit, of such relief as will fix their rights and protect their respective interests in the land; and if the life tenant, while in possession of the land, attempts to sell it by representing himself as the sole owner thereof and able to make a deed conveying the fee simple title thereto, the remaindermen may be granted an injunction restraining him from making such sale.

THEOBALD & THEOBALD for appellant.

R. C. LITTLETON and G. W. E. WOLFFORD for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE SETTLE—Affirming.

This appeal brings to us for review a judgment of the Carter Circuit Court which quieted the title asserted by the appellees, Andy Alexander and others, to a forty-five-acre tract of land lying on Four Mile creek in Carter county, subject to the life estate of their father, Jack Alexander, therein, and enjoined the latter from selling the land as his own. The action was brought in equity by the four appellees as the children and only heirs at law of Mary E. Alexander, deceased, against Jack Alexander, her husband, to obtain the relief granted them by the judgment. It was, in substance, alleged in the petition, as amended, that their mother, Mary E. Alexander, died two or three years before the institution of the action, intestate, leaving no estate of consequence except the tract of land mentioned, upon which she then resided, and was in the actual possession. That at her death the title to the land fell to appellees by inheritance under the statute of the State controlling the descent of real property, subject to the interest of their father therein, which, by virtue of a further statute of the State, in force at the time of his marriage to their mother and when the latter acquired the land in question, is a life estate in the whole as tenant by curtesy. It was also alleged in the petition, as amended, that appellees' mother, Mary E. Alexander, acquired the forty-five acres of land twenty-five or thirty years ago as a gift from her mother, Mrs. Artie Littleton, who obtained it from the appellant, W. P. Elam, by exchanging to him therefor a tract of land on Little Run creek in Carter county, belonging to her; that upon making this exchange Mrs. Littleton put her daughter, Mary E. Alexander, in possession of the land received in the exchange from Elam, and Elam took possession of the land on Little Run received by him by the exchange. That the exchange of lands thus made was in parol and no deeds were thereafter passed between the parties, but that from the time Mary E. Alexander, immediately following the exchange, was placed by her mother in possession of the forty-five acres of land thereby obtained from Elam down to the time of her death, which occurred between twenty-five and thirty years later, she continued in, and held, the actual possession of the land, claiming the same to a well defined, marked boundary, adversely to the appellant and all others; that appellees' father, Jack Alex-

ander, since their mother's death and shortly before the institution of their action, repeatedly and often proclaimed that they own no interest whatever in the land left by their mother; that it belongs to him and it was his purpose to sell it upon receiving a promised deed thereto from the appellant, W. P. Elam, whom he declared to be the holder of the title to the land. These statements of Jack Alexander, it was further alleged, constituted slander of appellees' title and cast a cloud thereon, hence, such statements, together with his continued threats and persistent efforts to sell the land, were urged in the petition as grounds for the injunctive and other relief asked in the prayer thereof.

The answer of the defendant, Jack Alexander, denied appellees' title; alleged that the title to the land was in the appellant, Elam, and that his and his wife's possession thereof was as tenants of Elam. The latter, by intervening petition, was made a party to the action. By this pleading, which was treated as his answer, Elam traversed the allegations of the petition, as amended, set up title in himself to the land and asked for its possession. All affirmative matter of his petition and answer, as well as that of the answer of Jack Alexander, was controverted by the appellees' reply. Jack Alexander does not join in the appeal taken from the judgment.

We find from an examination of the evidence contained in the record that its weight establishes, as claimed by appellees, the exchange, twenty-five or thirty years ago, of lands between Mrs. Artie Littleton, appellees' grandmother, and the appellant, Elam. The deposition of Mrs. Littleton is in some respects indefinite respecting the particulars of the transaction, owing, doubtless, to her extreme age. But it is positive and clear as to the fact that the exchange of lands was made; that is, that she exchanged a tract of land on Little Run creek owned by her for the tract on Four Mile creek owned by appellant; that the exchange was made that she might give the land on Four Mile creek to her daughter, Mary E. Alexander, appellees' mother; that it was made at the instance of her son-in-law, Jack Alexander, husband of Mary E. Alexander, and a brother-in-law of appellant, and the transaction was negotiated and consummated by him as her agent. The testimony of Mrs. Littleton is also clear as to the further facts that her daughter,

Mary E. Alexander, accompanied by her husband, Jack Alexander, immediately settled upon, and took possession of, the land on Four Mile creek, and continued in the actual, adverse possession thereof for more than twenty-five years and down to the time of her death; also that, immediately following the exchange, she surrendered to the appellant, Elam, possession of the tract of land on Little Run creek received by him in the exchange made with her, and that he thereupon took possession of same. It does not appear from her testimony or from that of any other witness in the case, how long appellant remained in possession of the Little Run land or what disposition was made of it by him, but does appear from the evidence that neither Mrs. Littleton nor anyone claiming under her, ever had possession of the Little Run land after its surrender to appellant, or asserted claim thereto.

The foregoing testimony of Mrs. Littleton is corroborated by that of the witnesses, A. J. Littleton, Wm. Littleton and J. T. Littleton, and is contradicted only by the testimony of the appellant, Elam, and Jack Alexander. The witnesses, A. J., Wm. and J. T. Littleton, in addition to their corroboration of Mrs. Artie Littleton as to the matter of the exchange of lands between her and the appellant, testified fully as to the possession by Mary E. Alexander of the tract of land on Four Mile creek down to the time of her death; that such possession was actual and to a well defined, marked boundary surrounding the land; that it continued for twenty-five or more years and was adverse to the appellant and all others. Moreover, such possession of Mary E. Alexander of the character, and covering the time, indicated was also shown by the testimony of the appellee, Andy Alexander, Mont Hunter and John Artist, the last two being in no way related to the parties to the action. It does appear from the testimony of these witnesses, or some of them, that after Mary E. Alexander and her husband had resided upon the land in question for seventeen or eighteen years continuously, they temporarily removed therefrom to Big Run creek, where they remained about three years, but that during part of this interval of three years, the appellee, Andy Alexander, was in possession of the Four Mile creek tract of land, as a renter thereof and her tenant, and that it was, a part of the time, cultivated by others under her

control; that at the end of the three years she and her husband returned to the land and lived thereon until her death. It thus appears from the evidence that her actual, adverse possession of the land in controversy from the time it was given her by her mother down to the time of her death was unbroken and uninterrupted.

Several of the above named witnesses also testified to declarations made at various times both by Mary E. Alexander and her husband, Jack Alexander, in the presence of each other, while they lived upon the land, showing her ownership thereof; those of the wife being to the effect that the land was hers and that of the husband that it was hers. It also appears from the evidence as a whole that Jack Alexander was at times an inebriate, and at all times improvident; that he repeatedly left his home and family, sometimes remaining away for months at a time; that during such absences the burden of maintaining herself and children rested upon the wife alone, and this burden she discharged by providing for them a support from the land.

The evidence fails to show that the appellant, Elam, asserted or made any claim of title to, or ownership of, the land in controversy before the death of Mary E. Alexander. It is true that both he and Jack Alexander testified that there had been no exchange of this land to Mrs. Artie Littleton for the land of the latter on Little Run creek, and that Mary E. Alexander's and Jack Alexander's possession of the land was as appellant's tenants; but we regard their testimony insufficient to overthrow that furnished by appellee's witnesses. Besides, the fact, appearing from the evidence, that appellant's financial condition was not such as to justify the generosity he claims to have manifested in permitting the use of the land by Jack Alexander, free of rent, during the twenty-five or more years of his and his wife's occupancy of it, together with his failure to assert his alleged ownership of the land prior to Mary E. Alexander's death, or even intimate a purpose to do so, is well calculated to excite suspicion that his intervention in this case is for the purpose of assisting his brother-in-law, Jack Alexander, to illegally deprive the appellees of their rights. In this connection it is proper to remark that Mont Hunter, whose deposition was taken by appellees, and who is not related to any of the parties, testified that he was acquainted with the reputation

of appellant for truth and morality and that his reputation is bad. He also mentioned the names of several persons residing in the community by whom he had heard appellant's reputation, in the particulars mentioned, discussed and that these persons declared his reputation for truth and morality to be bad. No attempt was made by appellant to contradict this testimony of Hunter, either by introducing as witnesses the persons named by Hunter as having declared his reputation bad, or others, although such persons lived near and were known to appellant.

A parol exchange of lands can no more be enforced than can a parol sale or gift of land, for the reason that, like the sale or gift, it is within the statute of frauds. But where one enters upon and takes possession of land which he has received in a parol exchange of lands or by parol sale or gift, and continues in the actual possession thereof to a well defined, marked boundary, claiming it adversely to the former owner and all others for fifteen years, the statutory period of limitation, his title to the land will be perfected by such possession. Sloan v. Grider, 19 R. 1698; Blackburn v. Hall, 30 R. 134; Caudill v. Bayes, 28 R. 182; Helton v. Campbell, 155 Ky. 257; Blanton, &c. v. Howard, &c., 148 Ky. 547; Delano, &c. v. Air, &c., 157 Ky. 369; Rice, &c. v. Blair, 161 Ky. 280. The reason underlying the above rule is thus stated in Delano, &c. v. Air, &c., *supra*:

"We have often held that where one enters upon the land under a verbal gift, and continues in possession for fifteen years claiming it as his own, the donor's right to recover the land is barred. (Commonwealth v. Gibson, 85 Ky. 666; Thompson v. Thompson, 93 Ky. 435; Ward v. Edge, 100 Ky. 757; Owsley v. Owsley, 117 Ky. 47; Robinson v. Huffman, 113 S. W. 459, and cases cited). While it is true that one holding under a title bond does not hold adversely to his vendor, to whom he looks for title, a different rule is applied in the case of a parol gift for the reason that the parol gift not being enforceable by law, the donor has a present right of action to recover the land; but the vendor who has given a title bond cannot maintain an action to recover the land from his vendee. . . . ."

In Owsley v. Owsley, *supra,* a further illustration of the doctrine under consideration is stated as follows:

"It is conceded that by the appellant's gift no title passed to appellee. Nor did appellant's admission that he had given his son the property, nor did even his oath to that effect in a trial in another case divest appellant of his title. If that has been done, it is solely because appellee has, by a continuous, adverse possession for fifteen years under claim of title thereby acquired it. It has been decided a number of times by this court that such possession by the donee under a parol gift will ripen into a fee simple title. . . . ."

In Tippenhauer v. Tippenhauer, 158 Ky. 639, the opinion contains a review of numerous cases upon this question, some of which we have cited above; and, with respect to the character of possession required by the donee claiming the land under a parol gift, we therein said:

"An amicable entry, not under an express, unconditional gift or purchase, although it may be accompanied by peaceable possession, will not ripen into a title in the occupier until after the real owner has been given, for the statutory period, warning of the purpose of the occupier and put upon his guard for the requisite time that the intention is to take the property under an adverse claim. If, however, the entry is made under an express, unconditional gift or a parol purchase, it is not necessary that the person in possession in order to claim it should openly assert his right to the property adversely, or in a notorious way or do more than exercise such ordinary acts of ownership in connection with the property as are usually exercised by owners; as, for example, by the payment of taxes, the making of repairs and the keeping up of insurance. . . . ."

After concluding its review of the cases, the opinion proceeds with the discussion of the question of possession as follows:

"The substance of these cases upon the point under consideration is that where a person takes possession of land under a parol purchase or under an express, unconditional gift and holds and claims it as his own, his possession will be deemed adverse from the beginning, and if it is continued for the statutory period, it will ripen into a good title, and this upon the theory that it was intended by the vendor or donor at the time of the sale or gift that the possession should be adverse, and, therefore, he has all the time notice of the adverse hold-

ing. But, on the other hand, when a donee enters upon the possession of land merely through the generosity or kindness of the owner unaccompanied by any express gift of the property, the entry will be deemed amicable and the holding permissive until the occupier asserts title in himself and this hostile claim of title is actually brought to the notice of the real owner by such acts or conduct on the part of the occupier as would put a reasonably prudent man upon notice of his intention to assert claim to the land by adverse possession, and in this character of cases the adverse holding does not begin until the character of notice indicated has been brought home to the real owner.''

We are convinced from the evidence the possession of the land here in controversy that was held and enjoyed by Mary E. Alexander, was of the character first mentioned in the above paragraph quoted from the opinion in Tippenhauer v. Tippenhauer, *supra*. That is, that it was, from the time of her entry upon the land, adverse to the appellant, who made a parol exchange of the land to her mother for the tract on Little Run creek, and also adverse to her mother, from whom she received the land by parol gift; and furthermore, that the statute of limitations then began to run, and, as her possession had continued for more than fifteen years before her death, her title to the land had become perfect before the happening of that event. This being so, the land, at her death, descended to the appellees, her children, subject to the curtesy or life estate of her husband therein. Being, therefore, the owners of the remainder, they were entitled to have their title to the land, to that extent, quieted, their possession of the land as remaindermen being sufficient to that end; for the possession of the life tenant is the possession of the remaindermen. Holmes v. Lane, &c., 136 Ky. 21; Simmons v. McKay, 5 Bush 31; Smith v. Shackelford, 9 Dana 475; Gregory v. Ford, 5 B. Mon. 475; Phillips v. Johnson, 14 B. Mon. 172; Gudgell v. Tydings, 10 R. 735. The latter, unless he be guilty of waste, may not deprive the life tenant of his possession of the land during the continuance of the life estate, but while he remains in possession of the land, such possession will not be regarded as adverse to the remaindermen. If, however, the life tenant attempts, as was here done by him, to repudiate their title by proclaiming that they have no title and that the

fee simple title is in himself or another, such acts and declarations will constitute slander of the title of the remaindermen, and cast a cloud thereon, justifying the granting, at their suit, of such relief as would fix their rights and protect their respective interests in the land. Treadway v. Farris, 90 Ky. 663; Commonwealth, &c. v. Clark, &c., 119 Ky. 85.

If, as the evidence conduces to show and the life tenant admits, he was attempting to sell the land, representing himself as the sole owner thereof and able to make a deed conveying the fee simple title thereto, it goes without saying that appellees were entitled to the injunction restraining him from making such sale.

Judgment affirmed.