# Howard et al. v. Carmichael et al.

(Decided February 17, 1931.)

MARTIN T. KELLY for appellants.

J. M. GILBERT, E. N. INGRAM and N. R. PATTERSON for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming.

This appeal is a continuation of a suit in which a judgment was reversed in Carmichael v. Old Straight Creek Coal Corp., etc., and Howard, etc. v. Cary-Glendon Coal Company, etc., 232 Ky. 133, 22 S. W. (2d) 572.

As will be learned from that opinion, the major portion of the land of Daniel Howard was partitioned between his widow and thirteen children. A few years later the survivors executed a mining lease for the entire boundary as a unit. This lease came into the ownership of the coal companies, which entered upon mining activities. It was subsequently held the Howards had no title to a part of the boundary, known as the Gibson land. One of the two companies involved then became the owner in fee of this Gibson land. Mining operations were conducted on both tracts as a unit. Portions of the original Howard land were used for transporting coal and disposal of refuse and water from the Gibson mines and for obtaining timber used therein. They also used the miners' houses on the Howard property in connection with the operations of the plant.

Lucy Carmichael and other heirs, lessors of the Howard property, sought injunctive relief and damages for such uses and also asked judgment for the recovery of some back royalties. Judgment was awarded and the damages distributed proportionately among the lessors. It was held by this court that, since the misuse of the property did not arise out of the joint lease, but constituted trespasses against and upon particular portions of the Howard land allotted to the respective heirs, only those individual landowners whose property had been thus invaded were entitled to the damages which had been awarded. So the judgment was reversed, with directions to hear proof and determine over and upon which separate lots of the Howard land trespass had been committed, and the extent thereof, and to award or distribute the damages accordingly. The amount of back

royalties was held properly apportioned in the same manner as royalties theretofore paid under the lease. An injunction was also authorized against the coal companies.

Upon the return, the case was referred to the master commissioner, and, on exceptions to his report, the court found and adjudged:

(1) That the portion of the Daniel Howard land which had been allotted to his widow as dower, after her death, by agreement in April, 1905, was divided among the remaindermen, and that by that division and through purchase of the interests of others the land constituting the dower was now owned by seven of the heirs, namely, S. C. Howard, John C. Howard, Noah Howard, Wilson Howard, and Lucy Daniel (now Lucy Carmichael), Henry Howard, and George Howard (subsequently his heirs); that S. C. Howard had sold his parcel so acquired to the predecessors in title of the coal company; and that John C. Noah, and Lucy, through adverse possession, had acquired title to their allotted parcels. No reference is made in the judgment to the parcels of the other three.

(2) That the evidence respecting the removal of timber from the property of the Howards was so indefinite and uncertain that it could not be determined what amount had been taken, nor the particular portion of the land from which it was removed or its value.

(3) The use of the miners' houses on the Howard land being authorized by their lease, although the occupants may also have worked in the mine within the Gibson boundary, no burden was placed upon them so long as the defendants were mining and running coal from the Howard lands, and therefore nothing should be awarded on this item of claimed damage.

(4) That the use of the Howard land in transporting the coal from the Gibson lease and the dumping of the refuse therefrom was confined to and damage had resulted to the separate land of (a) John C. Howard, which he had acquired in the original partition and also in the division of the dower tract; (b) of Lucy Carmichael acquired originally and her dower; and (c) the dower parcel of Noah Howard. It was adjudged that these three were entitled to the damages to the exclusion of the other heirs.

(5) That the damages of $6,933.97 should be divided as follows: Lucy Carmichael, 55 per cent.; John C. Howard, 35 per cent.; and Noah Howard, 10 per cent.

(6)    Perpetual injunctions were issued against the coal companies from continuing the trespass.

(7)    The costs incurred in the hearing and trial on these matters should be paid out of the damages which had been recovered and paid into court in June, 1929, while the case was pending in the Court of Appeals.

This appeal is prosecuted from that judgment by all of the heirs against Lucy Carmichael and the coal companies.    Cross-appeals have also been granted, so the entire judgment is before us for review.

The judgment sustained the report of the commissioner, except that he had reported that he was unable to say whether the dower tract had been divided, and had made a different apportionment of the damages, the court reducing Lucy's share from 66 per cent. to 55 per cent., increasing John's from 24 per cent. to 35 per cent., and leaving Noah's at 10 per cent.

The appellants, who are the Howard heirs except Mrs. Carmichael, attack the judgment upon these grounds:

(1)    There had been no division of the dower tract nor did the pleadings warrant such judgment.    Consequently, each heir is entitled to a proportionate share of the damages to the dower tract.

(2)    The value of the timber removed should have been awarded in addition to the amount fixed by the first judgment.

(3)    Under the evidence, the damages were not properly divided.

(4)    Compensation should have been allowed for the use of the miners' houses in connection with the Gibson property.

(5)    Interest should have been awarded on the amount of damages from date of judgment, as payment to the clerk of the court pending the first appeal was unauthorized.

(6)    An attorney's fee should have been allowed appellants' counsel, under section 489 of the Statutes; that is, they are entitled to contribution.

The appellee, Lucy Carmichael, in her cross-appeal joins with the appellants in their contentions respecting an additional judgment for the value of the timber and for the interest.    She is opposing their other contentions. The coal companies claim no interest is chargeable, and also contend that there was no division of the dower

tract. They argue that the damage for timber removed was included in the original judgment.

1. As much of the trespassing was committed upon that portion of the Daniel Howard property allotted in the partition proceeding to the widow as her dower, a very material issue is made respecting the judgment that this dower had been divided by agreement on April 15, 1905, and that S. C. Howard, John C. Howard, Noah ·Howard, and Lucy Carmichael had acquired title by adverse possession to the parcels set apart to them respectively. S. C. Howard subsequently conveyed his parcel to the defendant Cary-Glendon Coal Company.

The first petition in this litigation was filed by Lucy Carmichael as sole plaintiff against the Old Straight Creek Coal Company to recover damages for trespass to her land acquired in the partition proceedings of her father's estate, designated as tract No. 9. Within a few days she filed an amended petition, and alleged in sufficient form that, soon after their mother's death, the ten surviving heirs divided the dower tract by agreement, and that she took that part lying next to her parcel No. 9, and for more than fifteen years had held it in adverse possession. Thereafter the other Howard heirs were brought into that case by cross-petition. By answer and counterclaim these heirs affirmatively set up, among other things, their respective fractional interests in the dower tract and certain other parcels also alleged to be undivided. They prayed damages against the coal companies for trespasses committed thereon similar to those claimed by Lucy Carmichael in her pleading. By agreement all these affirmative allegations were controverted of record. Later Noah Howard and others instituted an independent suit against the coal companies and Lucy Carmichael, in which they affirmatively pleaded joint ownership of the dower tract as undivided land. The amended petition of Lucy Carmichael's pleading likewise had been controverted of record by the defendant coal company. The two cases were consolidated and tried together. It will thus be seen that the issue as to whether or not the dower tract had been divided was sharply presented by the pleadings, and we deem them sufficient to justify a judgment respecting a division of that tract and the claim of adverse possession. The former opinion is not susceptible to the narrow interpretation placed upon it by counsel that it confined the proceeding only to those parcels of land which had been

allotted to the respective heirs in the partition proceeding of their father's estate.

It is pretty well established that, after the mother's death in 1905, some sort of writing was signed by most, if not all, of the heirs agreeing to a division of the dower parcel and undertaking in a crude way to set apart the respective tracts. That writing was never recorded, and seems to have been lost. But shortly thereafter Lucy Carmichael erected a dwelling house and made other improvements on her portion of the dower which lay next to her parcel No. 9. John Howard, who seems to be the oldest of the group, corroborates Mrs. Carmichael as to this division, and testified that S. C. Howard also accepted his part and later sold it to the appellee coal company; that W. L. Howard deeded his part to him; that Noah Howard accepted his part and erected a storehouse thereon. Henry Howard testified that he never heard of a division of the dower until this suit arose and has been living on any part of the tract that he chose. However, he admits his knowledge of Lucy Carmichael having built several houses on it, in one of which she let him live while she was residing in another county. He admits that he made no claim whatever to any part of the land on which Noah was living. Other admissions make it apparent that he did know and understand that there was a claim being made of such division. S. C. Howard testified there was an agreed division and he took possession of his part. At the time of this division Noah Howard was about 13 years of age, but it is clear from the evidence that, after reaching maturity, he ratified the division then made and for fifteen years or more has used his share as his own and recognized the claim of others. He has since then been farming the parcel and renting out the building. See Henderson v. Clark, 163 Ky. 192, 173 S. W. 367.

It is further shown that in 1922 Lucy Carmichael built a larger dwelling house partly on her original tract and partly on her dower parcel. During that year another paper was signed by a number of the heirs bearing the date of April 15, 1905, which purported to be an agreed division of the dower tract by very general lines, some simply declaring that a certain named heir would take the part coming next to the one last recited. Lucy Carmichael's part is described as coming "next to John C. Howard's part, commencing at the Sulphur Spring and across the bottom to a big rock and straight up the

mountain to the back line of the dowery and being next to her adjoining land.'' This paper was signed by S. C. Howard, Henry Howard, George Howard, Lucy Daniel (Carmichael), John C. Howard and Noah Howard. It was intended to take the place of the paper signed in 1905. This paper corroborates the evidence pertaining to the agreed division and subsequent adverse possession. It refers to the property as being the ''dower of Clorinda Howard.''

Thus in Godsey v. Standifer, 101 S. W. 921, 31 Ky. Law Rep. 44, where there was an absence of proof as to the sufficiency and legal efficacy of a power of attorney under which an agent had deeded an undivided interest in land, it was held that the deed was competent evidence to show the existence of an executory contract for the sale of the interest in the land by the agent and also to show the date of the beginning of adverse possession, its boundary and extent. Likewise a void deed under which possession is claimed is sufficient to show those things. Big Sandy Company v. Ramey, 162 Ky. 236, 172 S. W. 508.

If it be conceded that there was in fact no memorandum signed by the parties in 1905 evidencing a partition of the dower tract or that it was insufficient in form or substance, nevertheless the overwhelming evidence is that there was at least a parol division at that time. And, although a verbal sale, division, or exchange of land is void under the statute of frauds (Elam v. Alexander, 174 Ky. 39, 191 S. W. 666), a parol partition of land, followed by adverse possession of the shares or separate parts by the respective parties for fifteen years, is conclusive. Caudill v. Bayes, 89 S. W. 114, 28 Ky. Law Rep. 182; Blanton v. Howard, 148 Ky. 547, 146 S. W. 1089; Conley v. Mayo, 157 Ky. 445, 163 S. W. 243; Henderson v. Clark, 163 Ky. 192, 173 S. W. 367. Where each of several joint owners of land takes possession of his separate part and continues to hold it for a period of years, it will be presumed that there has been a partition between the parties. Helton v. Campbell, 155 Ky. 257, 159 S. W. 785.

As is declared in Harrington v. Williams, 173 Ky. 575, 191 S. W. 273, 274, it is true that as a rule the possession of a joint owner of land is the possession of all the tenants in common; but it is also true that he may set up a claim and acquire possession adverse to his cotenants which will ultimately ripen into title. As there said: ''If one tenant openly denies the title of his coten-

ant, and is in possession of and claims the property himself, exclusive of the cotenant, and his holding of such possession continues 15 years and is so open and notorious against that of the cotenant as. to manifest a repudiation of the latter's right, the holding will then be regarded as adverse and a bar to the other cotenant's right of entry.''

The acts of at least the three heirs to whom the damages have been awarded, as well as of S. C. Howard, in signing the paper referred to in 1922 as of April 15, 1905, showing an agreed division, in occupying and improving or buying, selling, and deeding their respective parts, it seems to the court, prove unquestionably that there was an agreed partition with well-understood lines. And such acts gave sufficient notice to their cotenants that each was holding and claiming the respective parcels as his individual property and antagonistic to their rights, so that title matured in them after fifteen years of such adverse possession. Clinchfield Northern Railway Company v. Cline, 185 Ky. 528, 215 S. W. 538.

2. The Howards and Mrs. Carmichael contend that the court erred in not awarding damages in addition to the sum allowed in the first judgment for the value of timber removed from the Howard lands and used in the Gibson part of the mine. The response of the coal companies is that the sum affirmed by this court, to wit, 1½ cents per ton for 462,265 tons of coal taken from the Gibson land, amounting to $6,933.97, less 10 per cent., representing the interest in the Howard land owned in fee by the companies, included this item of damage. The first judgment is not free of ambiguity, as it contains two conflicting statements. Thus it was adjudged that ''the Howard heirs take nothing by their petition against either of the defendants . . . for timber cut and removed from said leased premises and used on what is known in this case as the Gibson lands.'' It then awards judgment for a specific sum covering certain royalties. It gives judgment against the defendant for the above-mentioned net sum of $6,230.58, and provides: ''This sum is adjudged in full payment of the additional servitude to which the said defendants have put the lands of the said plaintiffs up to the time of the filing of the petition in this case and it is further adjudged by the court that the said defendants, Old Straight Creek Coal Corporation and Cary-Glendon Coal Company may continue to . . . cut and remove timber, and use same from

any of the lands above named in the same way and manner and for the same purpose as they have been doing for the years, 1924, 1925, 1926, and 1927, but it is adjuded that said use of said lands, houses and timber as herein adjudged fixes on the lands known as the lands owned by the heirs of Daniel Howard an additional servitude,'' etc.

In a number of places, the opinion on the first appeal regarded the judgment as including the item of damage arising from the removal of timber. The measure and amount of recovery were approved, and the case remanded, with directions only to determine over and upon which separate lots of the Howard land "coal was transported from the Gibson land, and upon which refuse material and water from the Gibson land was dumped and drained, and from which timber was taken, and the amounts thereof as to each, and awarding the damages to the owners thereof in the proportion to which each is entitled.'' To the extent that the judgment was affirmed, it was definitely fixed.

3. There is no substantial claim made by the heirs other than the three among whom the division of the judgment was made to any damage of their individual parcels of land; their claims being rested upon the ground that they were jointly interested in the dower tract. With the affirmance of the judgment to the contrary, the question narrows to the correctness of the division between Lucy Carmichael, John C. Howard, and Noah Howard.

Evidence was submitted as to the various items of damage, and it was shown that the taking of timber was a major item. But it was very vague and indefinite. Representatives of the coal companies testified that in taking the timber no consideration was given to any particular portion of the boundary, and it was cut indiscriminately. This was quite natural, since the Gibson land was included within the boundary leased by the Howards and there was no reason for the companies at the time to regard any difference in the two properties. It was shown that these particular seams of coal yielded about 4,000 tons to the acre, and it required 20,000 feet to timber an acre. The quantity of coal removed from the Gibson property was definitely ascertained to be 462,265 tons. On this basis about 2,310,000 feet were required, which, at the lowest price of $6 per thousand feet on the stump, made the value of the timber used in the Gibson

mine $13,260. But it cannot be ascertained from the record how much of the timber came from the Howard and how much from the Gibson land. Perhaps it might be reasonably concluded that one-half of the timber used in the entire mining operations on both the Howard and Gibson properties was taken from the Howard lands. But when it comes to allocating the value of that timber among the different Howard parcels, we quite agree with the chancellor that the evidence was too vague and uncertain to justify any decree respecting the item. It consisted only of estimates of some of the parties, and those estimates were as far apart as the poles. A court is not expected to guess the correct solution, and litigants ought not to complain when the court refuses to do so because of their failure to produce the proof.

Disregarding the timber damage, the court divided the recovery in this proportion: 55 per cent. to Mrs. Carmichael; 35 per cent. to John Howard; and 10 per cent to Noah Howard. That judgment is not very materially different from the apportionment made by the master commissioner who had the benefit of a personal inspection of the properties, in addition to hearing the evidence, and who may have given consideration to the timber cut. We have fully considered the record, and can make no more equitable distribution. Certainly it cannot be said that the chancellor's decision in this respect is erroneous, and therefore his finding will not be disturbed.

4. Nor can we say that the judgment is in error in holding that the coal companies under their lease and contract with all the parties were entitled to the use of the houses, or rather the land occupied by them, irrespective of whether the miners were engaged in that part of the mine included within the Gibson boundary. We fully agree with the chancellor that under that contract, so long as the mines are being operated on the Howard land, they have no cause of complain of this item.

5. While the first appeal was pending in this court, on June 21, 1929, the defendant coal companies paid to the clerk of the circuit court $6,800.98, recited in an order as being "in satisfaction of the judgment rendered in the above styled cause up to this time," and further: "The Clerk is ordered and directed to hold said fund subject to the orders of this court or subject to the orders of the plaintiff and cross defendants if they will agree on the distribution thereof."

On March 4, 1930, which was after the mandate was filed below, an order was made reciting the payment by the defendant companies into the hands of the clerk of $633.33, less 10 per cent., which represented the judgment for back royalties, and the clerk was directed to disburse that sum, to wit, $570.06, and further: "the question of interest on this fund is reserved until final judgment in these consolidated cases."

In the final judgment, from which this appeal is prosecuted, reference is made to the payment of the $6,800.98 into the hands of the clerk "by order of court," and the companies were given credit on the judgment by that sum. The clerk was directed to distribute the balance in his hands, after deducting the $570.06 already distributed, to the payment of fees of the master commissioner and stenographers for taking proof. It was again adjudged that the three plaintiffs recover of the coal companies their respective portions of the sum of $6,933.97, but nothing is said concerning the interest which had been awarded in the first judgment. The clerk was simply directed to pay the money in his hands to the parties as directed.

The parties are insisting that they are entitled to the interest on the entire judgment from the date of its entry, to wit, December 20, 1928, contending that the payment into the hands of the clerk pending the appeal was authorized, and that they should not be deprived of interest on that sum while it was being held by the clerk. But the question is not before us on this appeal. The order of March 4, 1930, specifically reserved that question, and it does not appear in this record that the trial court has ever entered a final judgment respecting the matter.

6. A claim is also made by the Howard heirs to a contribution on the part of Mrs. Carmichael to the payment of their attorney's fees; it being pointed out that in their independent suit against the coal companies, and in which Mrs. Carmichael was also named defendant, there was recovered for her and themselves title to and royalties from 34 acres of land. Counsel assert that Mrs. Carmichael, having profited to that extent by services of the Howard attorneys, ought to share in the payment of the fees. Throughout this extended litigation Mrs. Carmichael has been represented by counsel. She filed the first suit claiming damages to her property, and

the other heirs came or were brought into it and joined with her in part in her fight against the coal companies, and she joined with them in their fight against the same antagonists. There has also been a considerable combat between Mrs. Carmichael on one side and the Howard heirs on the other. Indeed, it has been a free-for-all battle—almost everybody's fight. Each party, we have no doubt, will have a sufficient burden to bear when he comes to pay his own lawyers. At least he will think it is heavy enough without being called upon to compensate his adversary's warrior. It is the rule respecting contribution of attorney's fees that, where a party is represented by his own counsel, he will not be called upon to pay others. Bailey's Adm'rs v. Barclay, 109 Ky. 636, 60 S. W. 377, 22 Ky. Law Rep. 1244; Whitehead v. Fulton, 187 Ky. 717, 220 S. W. 531.

Upon the whole case, we are satisfied that the court has made a fair and equitable disposition of all the issues.

The judgment is therefore affirmed.