## Blackburn et al. v. May.

Oct. 28, 1941.

E. J. Picklesimer for appellants.

Stratton & Stephenson for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

Will Ann May lived on Pinson Fork of Pond Creek

in Pike County. He was 84 years of age when he died in 1936. For some 50 years prior to his death he had owned a tract of land consisting of approximately 200 acres on Pinson Fork, and had lived there after 1916. He had four children: Adrian, J. H. (Bud), Betty and Pricy. When each of the children married they made their home on their father's land. Adrian, the oldest son, lived on the property for more than 15 years prior to 1916. It does not appear that he made any improvements on the part of the farm on which he lived. J. H. has lived on the property since 1916, in a house he built thereon. Betty married a man by the name of Blackburn. The Blackburns built a house and made some other improvements on the part of the farm occupied by them. They made their home there for more than 15 years prior to Betty's death about 1930. Blackburn continued to live on the property with his children until April, 1934. Pricy married a man by the name of May. Her husband built a home on the property and they seem to have made their home there off and on for several years prior to Pricy's death about 1927 or 1928. Pricy had four children. After her death her family left the farm and her husband removed therefrom the house he had built. In 1934, Mr. May conveyed the farm in question to J. H. May for the stated consideration of $1,000, reserving a life estate for himself and his wife. This deed was acknowledged and put to record. It seems that J. H. looked after his parents during their latter years and managed the farm. He said that his father paid the taxes on the farm until 1928 and that he had paid them thereafter.

The Blackburn children instituted this proceeding in 1937 to have the 1934 deed set aside on the grounds of mental incapacity of Will Ann May and undue influence exerted on him by his son, J. H., and on the further ground that the recited consideration of $1,000 was never paid. They also set out in their petition a description of a boundary of land which they alleged was given to their mother by Will Ann May by parol gift and they claimed it by adverse possession for more than 15 years. They made parties defendant J. H., Adrian and Pricy's children. The first paragraph of J. H.'s answer denied the allegations of the petition, and in the second paragraph he set up his claim to the land by virtue of the 1934 deed. Adrian filed an answer disclaiming any interest in the land in 1936, but withdrew that

answer in June, 1937, and filed another answer claiming a boundary which he said had been laid off to him by his father. He asked that the 1934 deed be set aside for the same reasons as were set forth by the Blackburn children. Pricy's children, through their guardian ad litem, answered, setting up their claim to the boundary which they said had been laid off to their mother. They also challenged the 1934 deed. J. H. replied traversing the affirmative allegations in the two answers just mentioned.

Both sides brought forth considerable proof, most of it given by relatives, in support of their positions. The trial resulted in a judgment in favor of J. H. The Blackburns, Adrian and Pricy's children are appealing.

It is the contention of the appellants that the proof shows overwhelmingly that Will Ann May, more than 30 years before his death, divided the land among his four children and placed them in possession of it. They rely upon the case of Elam v. Alexander, 174 Ky. 39, 191 S. W. 666, in support of the proposition that a parol gift of land ripens into a fee simple title after 15 years' adverse possession. The appellee contends, however, that the possession of Adrian, Betty and Pricy was permissive and not adverse. Such a holding under the circumstances pointed out in the Elam case would not ripen into title after 15 years. As indicated in that case and others cited therein, the proof as to a parol gift of land must be clear and convincing. The question before us is: Does the proof offered in support of the contentions of the appellants meet that standard?

Adrian said that he lived on the land for a number of years prior to 1916, but that he never did come back. He said that he talked with his father about coming back, but he was told that there was not room for him. We have noted that when Pricy died her husband left the land and moved the house which he had built. Shortly after Blackburn remarried he entered into the following contract with Will Ann May:

"That for and in consideration of One Hundred Fifty Dollars ($150.00) cash in hand paid, receipt of which is hereby acknowledged the said Bazil Blackburn relinquishes all right to the possession of the land where said Blackburn now resides, including residence, outbuildings, garden, orchard, farm,

being the property on which said Blackburn has resided for some thirty years, and said Blackburn further releases all right or equity, implied or legal, which he may have accumulated by reason of his continued occupancy on the premises herein and agrees forever to refuse to assert any claim against said property and by his signature hereto, does so release and convey to the said William Ann May all right, title or equity he may have in said premises.

"Said Blackburn further agrees to vacate said premises on April 16, 1934, or be subject to a writ of forcible detainer."

Blackburn said that Mr. May told him, in effect, that the interests of his children would be protected. The appellants contend that the Blackburn contract shows that Mr. May recognized that Blackburn had an interest in the property, but we do not think that this necessarily follows. Blackburn had lived on the property for a number of years and had made certain improvements, and, as pointed out by the appellee, Mr. May probably felt justified in giving Blackburn $150 to get him off the property and to have him relinquish any claim he may have had in it. We do not think that the contract itself shows that Mr. May recognized that Blackburn had such an interest, because it refers to rights which "he may have accumulated." There is proof that the land was laid off into four boundaries, that stones were placed at certain corners and that Mr. May directed where a fence be built between the parts occupied by Adrian and Betty. There is proof also that the Blackburns had said something about a deed being executed to them by Mr. May and that he had said that he was going to execute deeds to his children for parts of the land; but it does not necessarily follow from such proof that Mr. May had actually given the land to his children, though there is some proof to that effect.

There is a wide range of proof as to the value of the land, some witnesses saying that it was worth around a thousand dollars and others saying that it was worth several thousand dollars. There is conflicting proof as to the payment of the $1,000 consideration set forth in the 1934 deed. Appellants contend that no consideration passed, and they say, in effect, that Bud May did not have $1,000. They attack vigorously his testimony as to how he got the money. He said, however,

that he did pay his father the amount set forth in the deed, and his daughter and his father's sister testified to the same effect.

We have examined the record carefully and have reached the conclusion that we would not be justified in disturbing the finding of the chancellor. We have noted the conflicting proof as to the parol gift of the land, and also the circumstances concerning the occupancy of it by the four children. Our rule is that we will not disturb the finding of the chancellor where the evidence to the contrary does nothing more than raise a doubt as to its correctness. Blankenship v. Green, 283 Ky. 700, 143 S. W. (2d) 294; Green v. Bryant, 287 Ky. 831, 155 S. W. (2d) 465.

Judgment affirmed.