**HOWARD et al. v. HOWARD et al.**

Court of Appeals of Kentucky.

Dec. 18, 1953.

of children—five by his first wife and eight by his second.

In 1901, in a petition for division, the court, by his commissioner, conveyed to each of the thirteen heirs an equal portion of the tract and set aside as dower for Clarinda Howard, for her life, a 64 acre tract of improved land. Other property owned at his death was not divided at that time. Later Clarinda Howard died intestate and up to the time of the commencement of this suit, her dower property had not been exactly determined.

On July 31, 1905, the coal minerals in the 13 tracts of land allotted to the 13 heirs, the dowry tract and the undivided land, which was part of Daniel Howard's estate, were leased for a term of 40 years to E. N. Ingram, which lease, by mesne conveyance, eventually was transferred to Cary Glendon Coal Company, a corporation. The property was worked until the lease expired in July, 1945, and during this period, the heirs of Daniel Howard received an apportionate share of the royalties without respect to whose property was mined.

The petition in the instant case described 14 tracts of land in which appellant and appellee were jointly interested or were claiming interest; averred that the property could not be divided without materially impairing its value and asked that it be sold and the proceeds be divided among the heirs in proportion to their interest. The prayer of the petition requested an accounting from appellees, Noah Howard, Evie Howard and John C. Howard. By amended petitions, filed from time to time, and by other appropriate pleadings, many additional issues were injected into the case.

Also, from time to time, the court entered judgments which disposed of various matters at issue, which were entered on the following dates:

Robert R. R. Boone, Pineville, for appellants.

W. R. Lay, Pineville, for appellees.

MOREMEN, Justice.

This is an appeal in a case involving a family dispute, which has existed for many years, concerning the descent and distribution of property which at one time belonged to Daniel Howard who died in the year 1900.

In June of 1944, appellants, who constitute the majority of the heirs, descendants of Daniel Howard, and other proper parties, filed this suit and named as defendants still other descendants of the same progenitor, who are, with others, the appellees.

Daniel Howard, at the time of his death, owned, among other property, a tract of land of approximately 1250 acres situated on the Left Fork of Straight Creek in Bell County. He was survived by his widow, Clarinda Howard. He had been married before and he was the father of two groups

No. 1—April 29, 1947 (Record, page 346)
No. 2—September 12, 1947 ( " " 363)
No. 3—September 19, 1947 ( " " 364)
No. 4—September 22, 1948 ( " " 414)
No. 5—November 23, 1948 ( " " 416)

On November 15, 1950, appellants filed a three volume record in this court with a statement of appeal which directed the clerk to grant an appeal, and which contained this language:

"The judgment appealed from was rendered by the Bell Circuit Court at its November Term, 1948, and appears on page 416 of the record."

The judgment which appears on page 416 was entered on the 23rd day of November, 1948, and deals with only two of the many issues which were raised during the course of this litigation.

Appellees, Noah Howard and his wife Evie Howard, and appellees John C. Howard and his wife Alice Howard, filed separate motions to dismiss the appeal as to all judgments except the one entered on November 23, 1948, on the ground that the appeal had not been granted within two years after the right to apply had first accrued. Civil Code of Practice, § 745. It was the position of John C. and Alice Howard that the judgment of November 23, 1948, in no way affected any of their rights.

In Cummings v. Delph's, 256 Ky. 849, 77 S.W.2d 353, 354, the court was presented with a similar situation and refused to consider any appeal other than the one named, saying:

"An appeal was prayed from the order appointing the receiver, but the statement of appeal herein, which is required by section 739 of the Civil Code of Practice, is not sufficient to constitute an appeal from the order appointing the receiver. Their statement of appeal designates the judgment overruling the demurrer to the answer, decreeing a personal judgment, and directing the sale of the property, as the judgment appealed from; therefore, we decline to review the order of the court appointing a receiver."

Appellants, in their brief on motion to dismiss, insist that, as a practical matter, property suits involve a number of questions, many of which are ancillary to the determination of a cardinal issue, and argue that no one of the five judgments was a "final order" until the last one was entered because the issues were so interwoven that no one ruling was final in itself as to the many issues raised until the last ruling was entered. It is true that a multitude of issues were litigated and to show how they were determined a résumé of the judgments is required.

*Judgment No. 1*—It was adjudged: (a) that Noah Howard's interest in lots No. 2 and 3 could be allotted to him without materially impairing the interests owned by other parties; (b) that the 3 acre and the 56 acre tract could be allotted to John C. Howard; (c) that the interest of John C. Howard and Noah Howard could be allotted to them in kind out of the 240 acre Fronie Asher tract, and (d) that John C. Howard is the owner of two-thirteenths' interest in the dower tract formerly owned by Wilson Howard.

■ The first three parts of the judgment do no more than declare that the land is susceptible of division and are not alone a final order. Bates v. Hanks, 262 Ky. 556, 90 S.W.2d 743. Under Item D of the order, John C. Howard is adjudged to be the owner of two-thirteenths' interest in the dower tract formerly owned by Wilson Howard. Under the authority of Blackburn v. Blackburn, 200 Ky. 310, 254 S.W. 915, this is a final order from which an appeal will lie.

*Judgment No. 2*—It was adjudged that (a) the commissioner had properly relocated the lines of the dowry tract of Clarinda Howard and his report, which had been lying over for exceptions, was confirmed; (b) the commissioner was directed to execute a deed to Noah Howard for lands reported to be his, which lands were the present interest in what was known as the dower tract of the Daniel Howard Estate.

The deeds were executed and acknowledged on September 19, 1947.

■ In Howard v. Carmichael, 237 Ky. 462, 35 S.W.2d 852, 855, this court decided that the dower tract, which was referred

to in a settlement made by the parties as being the "dower of Clorinda Howard," had been set apart by an agreement of the heirs which purported to be an agreed division of the dower tract by very general lines. In view of that finding, the court appointed an engineer to determine the correct lines of the interest of Noah Howard ana John Howard in this tract. The commissioner fixed these lines and, no exceptions having been filed, the court confirmed the report and directed deeds to be made. The deeds were duly acknowledged and delivered. This was a final judgment from which an appeal could have been taken.

*Judgment No. 3*—It was adjudged, among other things, that (a) the commissioner would allot to Noah Howard out of lot No. 2, which adjoins other lands owned by Noah Howard, 46.869 per cent, it being his interest in it by purchase and inheritance; (b) the commissioner would allot to Noah Howard 17.424 per cent of a second tract known as the Fronie Asher tract if said allotment as to the location could be made without materially impairing the value of the remainder of the tract; (c) that Noah Howard had title to this tract, as shown by the record; (d) the commissioner was directed to allot out of this boundary of land 17.472 per cent to John C. Howard if it could be done without materially impairing the value of the remainder of said tract; (e) the court described a third tract, which consisted of two adjoining tracts, one known as a 3 acre tract and the other known as the Otis Neal tract, containing about 56 acres. The commissioner was directed to allot to John C. Howard 65.05 per cent of this tract, as shown by the record to. be the amount of his interest.

█ Certainly, as shown above, a judgment fixing an interest in property is a final one. However, the order itself contained a provision to the effect that the case was continued until the commissioner reported and it is not necessary to determine the finality of this order as a whole.

On June 1, 1948, the commissioner's report was filed.

*Judgment No. 4*—It was adjudged that the court (a) overruled appellants' exceptions and confirmed the commissioner's report of partition of lots 2 and 3, the Fronie Asher tract, the 3 acre and 56 acre tracts; (b) corrected an error of 35 acres in the Fronie Asher survey; (c) adjudged that proceeds of sale of the 35 acre tract be divided among plaintiffs and that John C. Howard and Noah Howard take no part of it; and (d) "ordered and adjudged that this court's master commissioner execute to the defendants, John C. Howard and Noah Howard, deeds to * * * that portion of said land as allotted to them in the commissioner's report referred to."

We are of opinion that the judgment and orders above outlined, when taken together, were of such character as fixed the rights of Noah and John Howard so far as the issues therein decided were concerned. Appellants place reliance upon Kramer v. Kramer, 276 Ky. 504, 124 S.W. 2d 744, for support of their contention that the orders were interlocutory, but we find that case is only authority for the proposition that in a suit regarding settlement of a· guardian's account, an order of the trial court overruling the exceptions to the report of the commissioner was not a final order from which an appeal would lie. A case more in point is that of Banton v. Campbell's Heirs, 2 Dana 421, 32 Ky. 421, in which there were two separate judgments, the first holding that the land was divisible and another, after division, confirming the allotment. The court said:

"The decree of 1824, and especially that of 1825, must be deemed to have been final, as to the partition, and the rights to partition of the land. And, in the judgment of this court, the decree of 1825 should be also deemed to have been final, so far as it settled the rights to distribution, or ascertained and decided who were entitled to distribution. From such a decree, fixing the right, either party might have ap-

pealed at once, without waiting for an execution of the decree by the commissioners appointed to carry it into effect."

■■ Bates v. Hanks, 262 Ky. 556, 90 S.W.2d 743, 744, supports the finality of the first four judgments in this case because there it was said:

"A bare order of partition is not a final order, but such orders are rare. Usually they are parts of such an order which fix and adjudge the extent of the interests of parties, and where an order of partition is so drawn as to definitely fix the aliquot part, a petitioner is to receive, it is final."

This leaves for consideration only the final judgment (which appears on page 416 of the record and which was the only one mentioned in the statement of appeal) because, if the first four judgments did not decide the rights of the parties, then the only rights which have been decided appear in this judgment. If they did finally decide their rights, then this appeal came too late.

In view of the importance of this judgment to the general decision in this case, we will commit the sin of prolixity and copy it:

"A number of issues in this case having heretofore been submitted to the court and judgments entered thereon, the case being on submission to the court on the following issues which have not heretofore been passed upon, which issues are as herein set out:

"First Issue

"What interest did Emma Howard Smith, the widow of Henry Howard, deceased, have in the estate of her deceased husband, by reason of the writing executed to her by the plaintiffs, in addition to her dower rights?

"The court having read and considered the record on this issue and being sufficiently advised, finds and hereby adjudges that the widow, Emma How-

ard Smith owned a dower interest in all the estate of her deceased husband by virtue of section 392.020 of the Kentucky Statutes.

"It is further adjudged that by the writing executed to the widow, Emma Howard Smith, by the plaintiffs, that she was the owner of the rents and royalties arising from the interests of the plaintiffs in the estate of Henry Howard during the life of the said Emma Howard Smith.

"It is further adjudged by the court that the widow, Emma Howard Smith, by the execution of her deed to the defendants, Noah Howard and Eva Howard, conveyed all of her interest in the estate of her deceased husband, Henry Howard, including her dower and the rents and royalties arising from that part of the said estate that belongs to the plaintiffs during the life of the widow, Emma Howard Smith, and that said defendants, Noah Howard and Eva Howard are now the owners of all of same.

"Second Issue

"Has the note for One Thousand ($1,000.00) Dollars executed by Henry Howard in his lifetime to the defendant, Noah Howard, which note has heretofore in another action in this court been adjudged a valid claim against the estate of Henry Howard, been paid, settled or discharged?

"The court having read and considered the record, and being advised, finds that said note and judgment thereon has not been satisfied; and

"It is therefore adjudged by the court that the defendant Noah Howard, recover of the estate of Henry Howard, deceased, the note with its interest and cost, as allowed by a former judgment of this court, in the case of Emma Howard v. Noah Howard.

"It is further adjudged that the defendants, Noah Howard and Eva How-

ard recover their costs in this branch of the case.

"To all of which the plaintiffs object and except and pray an appeal to the court of Appeals which is granted."

Before discussing the judgment in connection with the first issue, it is necessary that we state facts concerning this phase of the case. Henry Howard died in the year 1935, and, under a defective order, an instrument purporting to be the will of Henry Howard was filed in the Bell County Court:

"I, Henry Howard, of Cary, Ky. I will half of my estate to Noah Howard and the other half to my wife, Emma Howard. This 15th day of August, 1933.
"Henry Howard."

The sufficiency of the county court's order in connection with the will was questioned and this matter was decided by this court in Howard v. Howard, 268 Ky. 552, 105 S.W.2d 630. And again in Ramsey v. Howard, 289 Ky. 389, 158 S.W.2d 981, this will was the subject of a contest between the various heirs. This case was reversed and remanded because of certain errors, and finally in Howard v. Ramsey, 297 Ky. 274, 178 S.W.2d 934, this court affirmed a judgment based on a verdict that the document had been forged. The evidence concerning the forgery was discussed at some length and this court apparently accepted as convincing that Noah Howard, after the death of Henry Howard, had prepared a will purporting to be the last will of Henry Howard and that the widow, Emma Howard, forged her husband's name to it. However, in the meantime, and while the foregoing litigation was pending, Emma Howard Smith and her husband, Alex Smith, entered into a conveyance on the 27th day of November, 1937, that recited that Emma Howard Smith and Noah Howard each owned an undivided one-half interest in all the estate of Henry Howard, deceased, and because Emma Howard Smith and Noah Howard had reached an agreement whereby the estate was to be settled, "the said Emma Howard is to convey to Noah How-

ard and Evie Howard, all of her interest in and to the estate of Henry Howard, deceased, it is the purpose of this deed to fully settle this estate as between the parties hereto." The recited consideration was the sum of $2,000 paid by Noah Howard and Evie Howard to Emma Howard Smith.

Now, prior to the time Emma Howard Smith entered into the foregoing agreement, the various heirs, including the appellants, signed a writing by which they conveyed to Emma Howard the right to collect rents and royalties from the Henry Howard estate. We have been unable to find this writing in the record but at least one witness testified positively as to the contents of this writing and the court believed the proof sufficient to establish the conclusion that it was executed. The appellants apparently concede that such an assignment was made because they contend at the time of the transaction in 1936, the heirs thought they had no right to the property because the will above discussed had not yet been declared to be a forgery. The trial court rejected this premise and we believe properly because the original will referred to above, Howard v. Howard, 268 Ky. 552, 105 S.W.2d 630, was offered for probate in the Bell County Court on May 14, 1935, and, soon after, the litigation about the will began. When we give the finding of the chancellor its true weight, we have no difficulty in determining that the conveyance by the heirs was made and that they were not misled at the time.

To recapitulate: (1) The heirs conveyed to Emma Howard the right to collect rents and royalties accruing from the estate of Henry Howard; (2) Emma Howard, for a valid consideration, conveyed all of her interest in the estate to Henry Howard; (3) the court, under issue one of the above judgment, which we have copied, found that even though the purported will of Henry Howard's estate was spurious, the conveyance, by Emma Howard, to Noah Howard and his wife was sufficient to transfer to them all interest that she had which included the royalties. In this, we believe the chancellor to be correct.

Concerning the second issue, the court held that the $1,000 note executed in his lifetime to Noah Howard had not been paid, and adjudged that Noah Howard recover of the estate of Henry Howard the amount due under the note. In connection with this part of the judgment, a statement of these facts is necessary: Heretofore the administratrix of the estate of Henry Howard filed suit to settle his estate and Noah Howard, defendant, filed proof of claim of the note together with satisfactory statutory requirements of proof as to its validity.

A special commissioner reported the claim to be valid and the court overruled exceptions to the commissioner's report and adjudged that the claim be paid. In the instant suit, Noah Howard, by answer, asked the court to direct that this note be paid out of the proceeds of the sale of Henry Howard's property before distribution to the heirs. His answer reads in part as follows:

"He states that he has a judgment which has not been paid or satisfied, against the estate of Henry Howard, deceased, for the sum of $1,000 with interest thereon from April 1st, 1922, no part of which has been paid, he says that this claim had been allowed and approved by this court, which allowing of said claim is now of record in this court, and that any judgment that is rendered in this case should direct the payment of this sum to the defendant before any distribution is made of any of the assets of the estate."

The appellant replied to the $1,000 claim:

"The plaintiffs specifically deny that Noah Howard had a judgment which has not been paid or any judgment at all against the estate of Henry Howard, in the sum of $1,000 or any sum or amount at all; they deny that said claim as allowed or approved by this court, or which is of record in this court or elsewhere."

In this connection, it is necessary to quote again from the agreement dated November 27, 1937, between Emma Howard Smith and her husband, who were parties of the first part, and Noah Howard and his wife, who were parties of the second part, because this agreement not only conveys considerable real estate, rents and royalties, as we have above pointed out, but it also contains this provision:

"It is also understood in this deed and a part of the agreement herein, that there are certain claims against the estate of Henry Howard which have not been paid, namely: One due to second party, Noah Howard and others, * * * and it is understood as a part of the consideration of this deed that the parties of the second part will discharge and pay all of said obligations * * *."

■ We think it is plain that this agreement included satisfaction of the note which Noah Howard had against the estate of Henry Howard. However, appellee contends that the portion of appellant's reply above copied does not form an issue as to the nonpayment of the note or to the existence of a judgment unpaid against the estate of Henry Howard, and relies upon Sandmann v. Getty, 254 Ky. 496, 71 S.W.2d 954. In that case, Sandmann admitted the execution of a note and denied it had ever been paid. No affirmative defense of payment was pleaded. It was held that such a negative defense might be reached by a demurrer. In the instant case appellants denied, not only the existence of the judgment, but also denied payment. If they had admitted the existence of the judgment, a situation similar to that which appeared in the Sandmann case would be presented. In any event, no demurrer was filed.

In view of the above, we cannot agree with the chancellor in his finding that the $1,000 note has not been paid, settled or discharged.

Therefore, the motion of John C. Howard and Alice Howard to dismiss the appeal, insofar as it pertains to them, is sustained. The motion of Noah Howard and Evie Howard to dismiss the appeal as to all judgments except the one rendered on

November 23, 1948, is sustained. The judgment of November 23, 1948, under the first issue set out in the judgment, is affirmed, but is reversed as to the second issue set out in said judgment, and this case is remanded for proceedings not inconsistent with this opinion.